Lone Tree Ditch Co. *et al.* v. Cyclone Ditch Co. *et al.*

1. The riparian rights of the pre-emptor of public lands as against private parties attach at the time of settlement on the land, and not at date of final proof.

2. Comp. Laws, § 2771, providing that the owner of land owns water standing thereon but not forming a definite stream, and that water in a definite stream formed by nature over and under the surface may be used by him so long as it remains there    but he may not prevent the natural flow of the stream, is not inconsistent with the act of 1881 prescribing that any person who may have or hold a title or possessing right or title, to any mineral or agricultural lands, shall be entitled to the usual enjoyment of the waters of the streams or creek for mining, milling agricultural, or domestic purposes, provided that the right to such use shall not interfere with any prior right or claim to such waters, where the law has been complied with in doing the necessary work;    and hence is not repealed thereby.

3. Under Comp. Laws, § 2771, providing that water running in a definite stream formed by nature over and under the surface may be used by the owner of the land so long as it remains there, but he may not prevent the natural flow of the stream, a riparian owner may use a reasonable quantity of the water flowing over or along his lands for irrigation purposes.

4. Appropriators of water whose rights were acquired subsequent to those of an upper riparian owner cannot complain of the use by such owner of the water for irrigation purposes.

5. Whether the use of a certain amount of water for irrigation purposes was excessive could not be determined on appeal where the evidence was not before the supreme court.

(Opinion filed March 1, 1902.

Appeal from circuit court, Pennington county. Hon. Levi McGee, Judge.

Suit by the Lone Tree Ditch Company and others against the Cyclone Ditch Company and others. From a decree in favor of the defendants, the plaintiffs appeal. Affirmed.

*Charles W. Brown,* for appellants.
No appearance for respondents.

CORSON, J.   This is an appeal from the part of a decree in this case adjudging to the defendant, Joseph Jolly, the right to 100 miner's inches of the water of Rapid creek, as prior and superior to the right of the plaintiffs to the water of said creek.   The action was brought by the plaintiff's to restrain defendants from diverting the waters of Rapid creek from the plaintiff's ditch, or in any manner interfering with the plaintiff's right thereto.

The court found that the plaintiffs and their predecessors in interest appropriated the waters of said creek to the extent of 1,300 miner's inches on the 23d day of March, 1882, when the notice of their appropriation of the water of said creek was posted.   The court further found that the defendant Jolly settled upon land situated on said creek on the 3d day of February, 1879; filed a declaratory statement therefor on the 3d day of April, 1880; and made cash entry thereof under the pre-emption laws of the United States on August 15, 1882; and he received the government patent therefor, bearing date July 30, 1884, containing the usual condition or reservation, "subject to any vested and accrued water rights for mining, agricultural, manufacturing and other purposes."   And the court concludes, as a matter of law, that the defendant Jolly having made a settlement upon the land owned by him prior to the location and appropriation of the waters of Rapid creek by the plaintiffs and their predecessors in interest, and prior to their settlement upon or entry of their said riparian lands, and the said land of the defendant Jolly being riparian to said creek, the said Jolly has the prior right to the use of the said water from the said stream, to the amount of 100 miner's inches, for the irrigation of his said riparian lands; and that

such right of said Jolly is prior and superior to any and all rights of the plaintiffs in or to the water of said stream, either as riparian owners or as the owners of their said water-right location. And the court after stating that the use of water for the purpose of irrigation by a riparian proprietor is a reasonable, necessary, and proper use of the same, states the grounds of its decision, in substance, as follows: One locating land riparian to a running stream of water in an arid region appropriates a sufficient amount of water from such stream for the purpose of irrigating his said land, subject to the prior appropriation of those who may have appropriated the water from the said stream, either under the law relating to the location and appropriation of the water only by reason of a water-right location, or the location and appropriation of both land and water by settlement upon entry of land riparian to the said stream.

It will thus be seen that two important questions are presented for the determination of the court. First. When did Jolly acquire the rights of a riparian owner as against the plaintiffs? Second. Has the riparian owner the right to use the waters of a creek or stream flowing over or along his land, for irrigating purposes, without making an appropriation of the same in the matter prescribed by the law of the state? Appellants' first contention is that their water right located March 23d, 1882, is prior and superior to the riparian rights of defendant Jolly, acquired by his final proof on August 15, 1882, under the pre-emption laws of the United States; second, that the riparian rights were abolished and abrogated by the water right law of 1881; third, that the part of the judgment appealed from is in any view erroneous because it ignores the riparian rights of the plaintiffs.

It will be observed that the plaintiffs take the position that Jolly acquired no rights as against them prior to his final proof and en-

try on August 15, 1882. We are of the opinion that this position is untenable, and that the rights of Jolly as a riparian owner date from February 3d, 1879, the time he settled upon the tract of land owned by him, riparian to Rapid creek, with the intention of claiming the same as a pre-emption or homestead claim, and to which he subsequently acquired the government title. That the right of the homesteader or pre-emptor, as against private parties, attaches at the date of his entry upon the land with the intention of holding the same, seems to have been settled by the supreme court of the United States in Sturr v. Beck, 133 U. S. 541, 10 Sup. Ct. 350, 33 L. Ed. 761; Id., 6 Dak. 71, 50 N. W. 486. This is evidenly the view of Mr. Kinney in his work on irrigation. He says: "It also settles the law to mean that, if the settlement is made prior to any appropriation of the waters of the stream that flows over the land, all appropriations of the same subsequent to that date are subject to the riparian rights of the patentee of the land." Kin. Irr. § 220 p. 355. It is true that Jolly could acquire no rights which he could enforce as against the government of the United States until he had made his final proof, and paid the government price therefor, but as against private parties his riparian rights attach at the date of his settlement. The distinction between the rights of the pre-emptor and the homesteader, as against private parties and as against the government of the United States, is clearly stated by Mr. Justice Feld in Shepley v. Cowan, 91 U. S. 330, 23 L. Ed. 424. In speaking of the case of Frisbie v. Whitney, 9 Wall, 187, 19 L. Ed. 668, and the Yosemite Valley Case, 15 Wall. 77, 21 L. Ed. 82, he says: "In those cases the court only decided that a party, by mere settlement upon the public lands, with the intention to obtain a title to the same under the pre-emption laws, did not thereby acquire such a vested interest in the premises as to deprive congress of the

power to dispose of the property; but whilst, according to these decisions, no vested right as against the United States is acquired until all the prerequisites for the acquisition of the title have been complied with, parties may, as against each other, acquire a right to be preferred in the purchase or other acquisition of the land, when the United States have determined to sell or donate the property. In all such cases, the first in time in the commencement of proceedings for the acquisition of the title, when the same are regularly followed up, is deemed to be the first in right." This is cited with approval by the court in Sturr v. Beck, *supra,* and the court in its opinion in that case uses the following language: "And as to the mere settlement with the intention of obtaining title under the pre-emption laws, while it has been held that no vested right in the land as against the United States is acquired until all the pre-requisites for the acquisition of the title have been complied with, yet rights in parties as against each other were fully recognized as existing, based upon priority in the initiatory steps, when followed up to a patent. 'The patent which is afterwards issued relates back to the date of the initiatory act, and cuts off all intervening claimants.' Shepley v. Cowan, 91 U. S. 330, 337, 23 L. Ed. 424." It will be noticed that the learned court uses the expression "under the pre-emption laws" showing that the court's attention was particularly called to pre-emptioners. It will be further noticed the court quoted with approval the statement, made in Shepley v. Cowan, that "the patent which is afterwards issued relates back to the date of the initiatory act, and cuts off all intervening claimants." While it is true the court in that case was discussing the rights of the homesteader, the reasoning of the court would seem to be equally applicable to the case of the pre-emptor, and in fact we think we may reasonably conclude from the language used by the court in that case,

before quoted, that it intended the same rule to apply in both classes of cases.

Section 5464, Comp. Laws, provides: "Any person settled upon the public lands belonging to the United States, on which settlement is not expressly prohibited by congress, or some department of the general government, may maintain an action for any injury done the same, also an action to recover the possession thereof, in the same manner as if he possessed a fee-simple title to said land." It will thus be seen that the rights of a pre-emptor who has settled upon lands subject to private entry are fully recognized and protected, by the law of this state, prior to his final entry and purchase of the land and the receipt of the patent therefor. It is quite clear that Jolly, at the time he made his declaratory statement, if not at the time of his settlement upon the land, acquired the rights of a riparian owner as against the plaintiffs, which subsequently appropriated the waters of Rapid creek. The learned circuit court therefore decided correctly in holding that Jolly's right was prior and superior to the rights of the plaintiffs.

The next question presented is: Did Jolly, as a riparian owner, have the right to use a portion of the waters of Rapid creek for irrigating his land? Upon this question the appellants contend: First. That section 2771 was repealed by the act of 1881. Second. If the section was not repealed, a riparian owner has not the right under the law to use water for the purpose of irrigation. Section 2771 provides as follows: "The owner of the land owns water standing thereon, or flowing over or under its surface, but not forming a definite stream. Water running in a definite stream, formed by nature over and under the surface, may be used by him so long as it remains there; but he may not prevent the natural flow of the stream, or of the natural spring from which it commences its

definite course, nor pursue nor pollute the same." The first section of the law of 1881 reads as follows: "Any person or persons, corporation or company, who may have or hold a title or possessory right or title to any mineral or agricultural lands within the limits of this territory, shall be entitled to the usual enjoyment of the waters of the streams or creeks in said territory for mining, milling, agricultural or domestic purposes; provided, that the right to such use shall not interfere with any prior right or claim to such waters when the law has been complied with in doing the necessary work." Section 2029, Comp. Laws. The law of which this section constitutes a part was enacted in 1881, and contains no repealing clause. Unless, therefore, the act is clearly inconsistent with the provisions of section 2771, that section still remains in force. Upon an examination of the act of 1881, we are satisfied that it contains no provision inconsistent with the provisions of that section. Sections 2339, 2340, Rev. St. U. S., provide as follows: "Whenever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing, or other purposes, have vested and accrued, and the same are recognized and acknowledged by the local customs, laws, and the decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same. * * * All patents granted, or pre-emptions or homesteads allowed, shall be subject to any vested and accrued water rights, or rights to ditches and reservoirs used in connection with such water rights, as may have been acquired under or recognized by the preceding section."

The government has by these provisions recognized the right of appropriating water, and taking the same from its natural channel. The legislature of this state has properly provided for the making of such appropriations, but the right of the riparian owners to the use of such waters, which have become vested, are such as are

prescribed by section 2771. In our opinion, therefore, the provisions of section 2771 are still in force, and this seems to have been the opinion of the supreme court of the United States in Sturr v. Beck, *supra*. In that opinion the court says: "The ninth section of the act of 1866 (14 Stat. 253) is referred to by Mr. Justice FIELD in Atchison v. Peterson, 20 Wall. 507, 512, 22 L. Ed. 414, and in the opinion it is said that 'the government being the sole proprietor of all the public lands, whether bordering on streams or otherwise, there was no occasion for the application of the common-law doctrine of riparian proprietorship with respect to the water of those streams.' When, however, the government ceases to be the sole proprietor, the right of the riparian owner attaches, and cannot be subsequently invaded. As the riparian owner has the right to have the water flow *ut currere solebat,* undiminished except by reasonable consumption of upper proprietors, and no subsequent attempt to take the water only can override the prior appropriation of both land and water, it would seem reasonable that lawful riparian occupancy with intent to appropriate the land should have the same effect." The court also quotes section 2771, and also the first section of the law of 1881, and seems to assume that both the section and the act are in full force.

This brings us to the last question, namely: Has the defendant Jolly, as riparian owner, a right to use the waters of said creek for the purpose of irrigation? Section 2771, before quoted, is a concise statement of the common-law doctrine applicable to the rights of riparian owners. This is apparent from the fact that that section is a literal copy of section 256 of the proposed code for the state of New York, and the code commissioners of that state, in a note to that section, cite a large number of English and American decisions in which the doctrine of the common law as applied to riparian own-

ers is discussed, and among them the two leading cases from New York of Arnold v. Foot, 12 Wend, 330, and Van Hoesen v. Coventry, 10 Barb. 518. While owing to climatic conditions in Great Britain, where the common law as to riparian owners had its origin, and the Eastern states of this Union, where the common law governing those rights has been adopted, water for irrigating purposes was not usually required, still the common law seems to have recognized the right of the riparian owner to use a reasonable amount of water for irrigating purposes. Elliott v. Railroad Co., 10 Cush, 193. 57 Am. Dec. 85. This subject was fully considered by the learned supreme court of California in an exhaustive opinion, in the important case of Lux v. Haggin, 69 Cal. 255, 10 Pac. 674, under proposition 15, on page 394, 69 Cal., and page 755, 10 Pac. The court in that case, speaking by Mr. Justice McKINSTRY, reviewed the English and American authorities, and arrived at the conclusion that at common law the riparian owner had the right to use the water flowing over or along his land for irrigating the same, and, in view of the fact that irrigation was necessary in order for the successful growing of crops in that state, the riparian owner had the right to use a reasonable amount of water of the stream for irrigating his land riparian thereto. In that state, as in this, two systems prevail: One for acquiring the use of water, for irrigating purposes, by appropriation; and the other, the common-law right to the use of water, not so legally appropriated for irrigating purposes, by the riparian owner. The rule as established in that state is more clearly stated in Harris v. Harrison, 93 Cal. 676, 29 Pac. 325, in which the court says: "But in some of the western and southwestern states and territories, where the year is divided into one wet and one dry season, and irrigation is necessary to successful cultivation of the soil, the doctrine of riparian ownership has by judicial de-

cision been modified or rather enlarged, so as to include the reasonable use of natural water for irrigating the riparian land, although such use may appreciably diminish the flow down to the lower riparian proprietor. And this must be taken to be the established rule in California, at least, where irrigation is thus necessary. Lux v. Haggin, 69 Cal. 394, 10 Pac. 755. Of course there will be great difficulty in many cases to determine what is such reasonable use; and 'what is such reasonable use is a question of fact, and depends upon the circumstances appearing in each particular case.' The larger the number of riparian proprietors whose rights are involved, the greater will be the difficulty of adjustment. In such a case, the length of the stream, the volume of water in it, the extent of each ownership along the banks, the character of the soil owned by each contestant, the area sought to be irrigated by each—all these, and many other considerations—must enter into the solution of the problem; but one principle is surely established, namely, that no proprietor can absorb all the water of the stream, so as to allow none to flow down to his neighbor." In what is known as the Black Hills region in this state, similar conditions exist to those of California. Crops cannot be successfully raised in that section without irrigation. To hold, therefore, as contended for by the appellant, that the waters of a stream not appropriated prior to the acquision of the right of the riparian owners must flow in undiminished quantity through the land of the various riparian owners, without the right to use the same for irrigating purposes, would in effect deprive them of the use of the waters of running streams, and cause great deteriment to the settlers in that part of the country. It seems to us, therefore, that we may very properly construe the section we are considering in such a manner as to permit riparian owners to use a reasonable quantity of the water flowing over or along their lands for irrigating the same. Of

course, no one riparian owner would have the right to divert all the water of a creek for irrigating his land, to the exclusion of all other riparian owners, and, as stated by the California courts, there is necessarily some difficulty in adjusting the rights of the various riparian owners so that justice may be done to all. But as the court settling these rights passes upon the question as a question of fact, it will, after a full consideration of all the circumstances connected with the use of water of the stream, and the various rights of the different owners, be able to properly adjust these rights. Under this view of our statute, the rights of prior appropriators of the water of a stream are fully protected, and water not so appropriated may be properly used for irrigating purposes. In some of the states in the arid regions of the west, the courts hold that the common law is inapplicable, and therefore not in force. Such is the rule in Nevada (Reduction Works v. Stevenson [Nev.] 21 Pac, 317, 4 L. R. A. 60, 19 Am. St. Rep. 364) ; In Idaho (Drake v. Earhart [Idaho] 23 Pac. 541) ; in Wyoming (Moyer v. Preston [Wyo.] 44 Pac. 845, 71 Am. St. Rep. 914) ; in Colorado (Hammond v. Rose, 11 Colo. 526, 19 Pac. 466, 7 Am. St. Rep. 258) ; and Mr. Kinney, in his work on irrigation, states that the same doctrine is held in Utah, Arizona, New Mexico and Montana. But we are of the opinion that the doctrine as applied to the rights of appropriators and riparian owners by the courts of California, in view of the statute law of this state, is the correct doctrine, and more consistent with our system of water rights. Taking this view of our statute, we are of the opinion that the court below ruled correctly in adjudging to defendant Jolly the right to the use of 100 inches of the water of Rapid creek for irrigating purposes, as his rights as a riparian owner accrued prior to the appropriation of the plaintiffs.

Certainly the plaintiffs, as subsequent appropriators, have no

right to complain, for, though riparian owners as well as appropriators, their rights as riparian owners were also subsequent to those of Jolly.

The evidence not being before us, we cannot say that the 100 inches allowed Jolly was excessive. The judgment of the circuit court is affirmed.

HANEY, P. J. (concurring specially). The riparian rights of the defendant Jolly are correctly determined in the foregoing decision, for the reason that he settled upon his land before the act of 1881 took effect. In my opinion the legislature intended by that act to substitute the law of appropriation for the common law relating to the waters of streams and creeks. It seems to me the act should be regarded as an appropriation of such waters by the territory; and that titles to lands settled upon since it took effect are subject to the right of appropriation.