## STENGER v. THARP *et al.*

1.  A riparian owner, though entitled to the reasonable use of the waters of the stream not previously legally appropriated for irrigation purposes, is not entitled to so use such waters as to exclude other riparian owners from use thereof.

2.  The right of a riparian owner to use the waters of the stream for irrigation purposes attached at the time of settlement on the lands for the purpose of holding the same as a homestead or by pre-emption.

3.    The rights of a riparian owner to appropriate the waters of the stream for irrigation purposes is limited to the amount actually used by him for proper irrigation purposes within a reasonable time after settlement on the land, not exceeding the carrying capacity of his ditch.

4.    The right cf a riparian owner to use the water of a creek flowing over or through his land is not an easement, but an incident to and a part of the land, and can be lost only by adverse right, grant, actual abandonment, or by prior legal appropriation.

5.    Where tenants of a riparian proprietor were made parties to a suit to restrain them and others from diverting the waters of a stream to which plaintiff claimed a prior right, and a judgment was rendered in plaintiff's favor against such tenants on the theory that they were entitled to whatever rights in the stream their landlord possessed, plaintiff was not entitled to object on appeal that such tenants had no right to the water or the land, on the ground that their lease was invalid and had expired before the entry of judgment.

(Opinion filed April 7, 1903.)

Appeal from circuit court, Custer county. Hon. JOSEPH B. MOORE, Judge.

Action by Edward Stenger against Paul Tharp and others. From a judgment in favor of plaintiff, defendants appeal. Reversed.

*Schrader & Lewis,* for appellants.

With respect to all controversies arising which involve claims to water which have vested since the act of July 26, 1866, whether those controversies arise between those who claim the water of the same stream by appropriation merely, or between those who claim the water by virtue of a patent to the land over which or adjoining which the stream flows; or controversies arising between those who claim the water by appropriation and those who claim it by virtue of their patent, the law is now settled to be uniform and to be that he who has

the prior, has the superior right.' "  Sturr v. Beck, 6 Dak. 71; Sturr v. Beck 133 U. S. 541, Co. Ed. B. 33-761. See also section 2771 Comp. Statutes So. Dak. The right of a riparian owner to irrigate, is a natural right in arid districts, is supported by the following decisions: Barrett v. Metcalf, 33 S. W. 758; Tolle v. Carreth, Tex. 365; Evans v. Merriweather, 3 Scam (III.) 496; Benton v. Johncox, 49 Pac. 495; Hargrave v. Cook, 41 Pac. 18, (108 Cal. 72); Wiggins v. Muncapote Co. Col. 45 Pac. 160; Van Sickle v. Haines, 7 Nev. 249; Vernon Co. v. City Los Angeles, 39 Pac. 862; Lin v. Sheffer, 33 Pac. 678; Smith v. Corbett, 48 Pac. 725; Gould v. Eaton 49 Pac. 577; Gould v. Stafford 18 Pac. 879; Faull v. Cook, 26 Pac. 662.

By common law the right of a riparian owner to the use of the waters of a stream is inseparably annexed to the soil and passes with it, not as an easement or appurtenance, but as part and parcel of it. Use does not create the right and disuse cannot destroy or suspend it-  It is a vested right and can only be lost by a conveyance of the water by the owner of the land or 20 years adverse use by another in possession. Kinney on Irrigation Sec. 59; Gould on Waters Sec. 204; Pomeroy on Riparian Rights Sec. 152; Washburn on Easements, Servitudes p. 316; Benton v. Johnson 49 Pac. 495. The rights of a patentee of the government relate back to the first act of the settler necessary in the proceedings to acquire title. Kinney on Irrigation, Sec. 210 289; Sturr v. Beck 133 U. S. 541; Benton v. Johncox 49 Pac. 495; Faull v. Cook, 26 Pac. 662; Larsen v. Irrigation Co., 23 Pac. 974.

There are two methods of acquiring the right to the use of water other than riparian. 1st. By actually diverting and

using the same, and 2nd. By statutory location followed by use.

One who diverts and uses water on his land without complying with the statutory rules of location has from the date of such diversion and use a prior right to hold and use the same as against a subsequent appropriator under the law who has complied with all the rules of location. Wells v. Manto 34 Pac. 324; Watterson v. Sauldenhare 35 Pac. 432, Burrows v. Burrows 23 Pac. 146; DeNecocia v. Curtis 20 Pac. 563.

The law of So. Dak. regarding water rights embrace sections 2029 to 2038 of Comp. Statutes.

Appropriation of water depends on the application of the water to the intended use and not on the size of the ditch or amount claimed in notice. Low v. Rogers, 37 Pac. 82; Hindman v. Rizor, 27 Pac. 13; Kinney on Irrigation Sec. 164; Union Mill Co. v. Daugberg, 81 Fed. 73; Fort Morgan Co. v. South Platte Co. 30 Pac. 432

Mere non-user is not abandonment. Sloan v. Glancy 47 Pac. 334; Garrett v. Noys 44 Pac. 959; Smith v. Mining Co. 45 Pac. 632; Wisner v. Simmons 39 Pac. 6; Moss v. Rose 41 Pac. 666; Integral v. Altoona Co. 75 Fed. (C. C. A.) 379.

The defendants could change the point of diversion of the water from the creek as they did do, and plaintiff cannot complain. Smith v. Corbett, 48 Pac. 725; San Louis Co. v. Estrada Co. 48 Pac. 1075; Ramelli v. Irish, 31 Pac. 41; Kinney on Irrigation Sec. 248.

The rights of the plaintiff as a riparian owner cannot be considered by the court in this action as the plaintiff in his complaint has not shown to what extent he is entitled, if any, to the use of the waters of the creek as a riparian owner.

San Louis Water Co. v. Estrado, 48 Pac. 1080; Water Co. v. Gague 26 Pac. 889.

*Wood & Buell,* for respondent.

When a water-right is located and the construction of the ditch completed, with reasonable diligence, the right relates back to the time when the first step was taken to secure it. Osgood v. Water and Mining Co., 56 Cal. 571; N. C. & S. C. Co., v. Kidd 37 Cal. 282; Kimball v. Gearhart 12 Cal. 27; Maeris v. Bicknell 7 Cal. 261; Kelly v. Natoma Water Co. 6th Cal. 105; Dphir Silver Mining Co. v. Carpenter 4 Nev., 534; Irwin v. Strait, 18th Nev. 436.

The Riparian theory is better adapted to the wants and conditions of the Eastern States; and the water-right theory to the Western States. The riparian theory does not prevail in New Mexico. Kinney on Irrigation section 547; nor in Montana, section 554; nor in Utah, section 457; nor in Nevada, 21st Pac. 317, Reno Smelting Company v. Stevenson; nor in Idaho, 23 Pacific 541, Drake v. Earhart; nor in our sister state, Wyoming, 44 Pac. 845, Moyer v. Preston, and never has existed in Colorado, which is said to have made the highest progress and reached the highest point of productiveness under its water-right system, and whose decisions are to-day regarded as the leading decisions upon the water-right question. Coffin v. Lefthand Ditch Co. 6 Colo. 447; Golden Canal Co. v. Bright, 8 Colo. 148; Hammin v. Rose, 11 Colo. 526.

CORSON, J. This is an action to enjoin the defendants from interfering with plaintiff's water right or diverting any of the water therefrom. Findings and judgment were in favor of the plaintiff, and the defendants appeal.

Plaintiff claims the right to practically all of the water in Battle creek by virtue of two certain appropriations of the same made by plaintiff's grantors and predecessors in interest, and a location made by himself, and which he insists were prior and superior to any rights to the waters of said creek acquired by the defendants. The defendants on the other hand, claim both as prior appropriators and riparian owners, certain portions of the waters of said creek. The plaintiff is the owner of 2,600 acres, about 2,200 of which are riparian to said creek, and on which he uses the waters claimed by him for irrigating purposes. He does not, however, make any claim to the waters of said creek; in this action, as riparian owner.

The court, in its findings of fact, found substantially that in September, 1881, one John Carr, the predecessor in interest of plaintiff, located a water right on said creek for irrigation, domestic, and other useful purposes, to the extent of 100 inches,. miner's measurement, and at the time of the said appropriation the same had not been appropriated by any other person or persons whomsoever; that, during the year 1882, Scurlock and Nunnally, the predecessors in interest of the plaintiff, located a water right on said creek to the extent of 200 inches, miner's measurement, for irrigation, domestic, and other useful purposes; that in August 1890, the plaintiff located a water-right on said creek, claiming the waters thereof to the extent of 300 inches, miner's measurement, for irrigation, domestic and other useful purposes, and that the said amount of water was and is necessary for the successful cultivation of plaintiff's said lands, and, at the time of the diversion and appropriation of said waters of said creek by the plaintiff, the same

had not been appropriated by any other person or persons whomsoever, except as aforesaid; that the volume of water flowing in said creek at its ordinary stages, and during the irrigating season, does not exceed 300 miner's inches, and is insufficient and inadequate to properly irrigate the said lands riparian to said creek and lying under the aforementioned ditch; and that one inch of water, miner's measurement, is necessary to properly irrigate one acre of land in the valley of said Battle creek. The defendants claim that James Hertgering, with a number of others, made the first water-right location upon said creek, but the court finds that the said water right so attempted to be located was wholly abandonded by the said locators prior to the year 1886, and has never since been used by any person or persons. This finding, not being excepted to, must be taken as true, and this location will not be further considered.

The court further finds that in April, 1896, the defendants wrongfully and unlawfully diverted 200 inches of the waters of said creek from its natural channel, and thereby deprived the plaintiff of the use thereof.

The court further finds that on the 10th day of June, 1879, said Hartgering settled upon a certain tract of land fully described, riparian to said creek, and thereafter received a patent therefor; that Paul Tharp settled upon a tract of land riparian to said creek on the 21st day of June, 1881, and thereafter received a patent therefor.

The court further finds that John Carr settled upon land riparian to said creek on the 5th day of February, 1880, for which he subsequently received a patent. This tract of land was conveyed by Carr, together with his water right, to the

plaintiff before the commencement of this action. The defendants Hanson occupied a portion of the land riparian to said creek as tenants of Hartgering.

It is contended on the part of the defendants that the Hartgering homestead was the first riparian right acquired on said creek, the Carr land owned by the plaintiff second, the Swanzy land third, the other lands of the plaintiff fourth and fifth, and the Tharp land sixth; and that when they settled upon the land they thereby appropriated the waters that flowed over the same, or a sufficient amount to irrigate the same.

The defendants further contend that the court erred, first in holding that a water right could be located upon said creek by which a prior riparian owner would be deprived of water sufficient to irrigate his land; and, second, that the court erred in finding that the Carr water right exceeded 60 inches, the Scurlock 40 inches, Nunnally 40 inches.

This court has recently held, in the case of Lone Tree Ditch Company et al. v. Cyclone Ditch Company et al. 16 (S. D.) 91 N. W. 352, that a riparian owner has a right to use the waters of the stream, not previously legally appropriated, for the purpose of irrigating his land, but that the said use must be reasonable, and not such as to exclude other riparian owners from the use of the waters of said stream for irrigating purposes. The court further held in that case that the rights of the riparian owner attach at the time of his settlement upon the land for the purpose of holding the same as a homestead or pre-emption. It will not be necessary, therefore, to discuss these questions in this opinion. How much water would be required for irrigating purposes by the parties to this action it is not now necessary to inquire, as there is no finding by the

court upon this question. The only question. therefore, necessary to be determined is, did the court err as to the amount of water plaintiff was entitled to divert from said creek by means of the water rights claimed by him, and as to the priority of such rights? The court evidently proceeded upon the theory that it was controlled by the capacity of the ditches or canals constructed by the appropriators, but in this view of the case the court was clearly in error. The rights of a party in appropriating water is limited to the amount he actually uses for a beneficial purpose, not exceeding the carrying capacity of his ditch or canal.

In Barrows v. Fox, 98 Cal. 63, 32 Pac. 811, the Supreme Court of California, speaking by BEATTY, C. J., lays down the rule as to the extent of an appropriation as follows: "The extent of an appropriation is limited, not by the quantity of water diverted, but by the quantity which is, or which may be, applied by the appropriator to a beneficial use; and, as to any surplus, the riparian proprietor below the point of diversion has a right to demand that it should flow in the stream as it has been accustomed to flow." Peregoy v. McKissick, 79 Cal. 572, 21 Pac. 967.

In Senior v. Anderson, 115 Cal. 496, 47 Pac. 454, the Supreme Court of California had under consideration a case in which the predecessor of the defendant had claimed the right to divert all the waters of San Antonio creek for irrigating purposes; but it appeared from the evidence that he had never used for proper irrigating purposes the amount of water claimed, as the amount of land irrigated did not exceed 40 or 50 acres, and that the surplus water carried by the appropriator's canal was run off on the hills expressly for the purpose of

holding the water claimed to have been appropriated. The Supreme Court of California in its opinion, after a review of the evidence, says: "This evidence clearly shows that the quantity of water claimed by the defendants under the Hines appropriation largely exceeds the quantity put to any usefnl purpose on the Hines ranch, and therefore exceeds the quanti ty actually appropriated. While the quantity of water appropriated for use upon the Hines land is the measure of the quantity appropriated by Hines, we do not hold that the water so appropriated may not be used upon other land; but the fact that other lands may be, or are, irrigated from the Hines ditch, does not affect the quantity of water appropriated." And the court quotes with approval the statement of Mr. Justice Field in Atchison v. Peters, 20 Wall. 514, 22 L. Ed. 414: "The right to water by prior appropriation is limited in every case, in quantity and quality, by the uses for which the appropriation is made. A different use of the water subsequently does not affect the right; that is subject to the same limitations, whatever the use. The appropriation does not confer such an absolute right to the body of water diverted that the owner can allow it, after its diversion, to run to waste and prevent others from using it for mining or other legitimate purposes." The court proceeds: "We do not hold that the Hines appropriation is limited by the quantity of water he could put to a useful purpose upon his land the first or second year, but to such quantity as he could put to a useful purpose upon his land within a reasonable time by the use of reasonable diligence. * * * The fact that he, for an unreasonable time, delays additional cultivation should be, construed into an abandonment of his original claim to divert a sufficient quantity to irrigate

his whole tract, and his appropriation, after such un-reasonable delay, should be confined to such necessary use as applied to lands he had cultivated within a reasonable time." Cole v. Logan, 24 Or. 304, 33 Pac. 568; Simmons v. Winters, 21 Or. 35, 27 Pac. 7, 28 Am. St. Rep. 727; Barnes v. Sabron, 10 Nev. 217; Smith v. Hawkins, 120 Cal. 86, 52 Pac. 139; Low v. Schaffer, 24 Or. 239, 33 Pac. 678; Nichols v. McIntosh, 19 Colo. 22, 34 Pac. 278; Colo. Mining Co. v. Larimer (Colo. Sup.) 56 Pac. 185; Becker v. Marble C. I. Co., 15 Utah, 225, 49 Pac. 892, 1119; Manning v. Fife, 17 Utah, 232, 54 Pac. 111; Clough v. Wing (Ariz.) 17 Pac. 453.

In the case at bar the plaintiff, by using the water so claimed to be appropriated by Carr, Scurlock, and Nunnally, and enlarging the ditches made by them, gained no additional rights, and could not further extend the appropriation made by those appropriators. As before stated, the amount of water used by those appropriators for useful purposes limits the extent of their appropriation. It is quite clear from the evidence that Carr, the appropriator of the first water right claimed by the plaintiff, did not at any time irrigate to exceed 60 acres of his land, and, taking the findings of the court as true, that 1 inch of water, miner's measurement, was sufficient to irrigate 1 acre, Carr's right was necessarily limited to 60 inches. In the case of Scurlock, the evidence is quite clear also that no more than 40 acres were irrigated by means of his ditch prior to the purchase of the same by the plaintiff; and the same may be said as to the Nunnally water right.

The court clearly erred in holding that the tenants of Hartgering were estopped from claiming their rights as riparian owners. The right of a riparian owner to the use of the

water of a creek flowing over or through his land is not an easement, but an incident to and a part of the land itself, which can only be lost by adverse prescriptive right, grant, or actual abandonment. Lux v. Haggin, 69 Cal. 255, 10 Pac. 674, or by prior legal appropriation.

It is insisted by the plaintiff that the Hansons, the tenants of Hartgering, had no right to the water or to the possession of the Hartgering land, for the reason that their lease was not in writing, and for the further reason that, even if their lease was valid. it had expired before the entry of judgment in this action. But, in the view we take of the case, the Hansons, having been made parties to the action: should be regarded as representatives of Hartgering, and, as a judgment has been entered against them, their right to the water as the tenants of Hartgering was necessarily determined by the action, and the plaintiff is now estopped by his own judgment from raising the question as to their right as tenants of .Hartgering. The case was evidently tried in the court below upon the theory that they represented Hartgering, and were entitled to all the rights that Hartgering had or might have to use the waters of the creek for irrigating purposes, and, that being the theory upon which the case was tried in the court below, it must be determined in this court upon .the same theory. Again, the court erred in ignoring the rights of the defendants Tharp and the Hansons as riparian owners. All the rights acquired by Carr, Scurlock, and Nunnally were acquired subject to the riparian rights of Hartgering and his tenants, the Hansons, and the plaintiff's appropriation of the water in 1890 was subject to the riparian rights of all the defendants and all other prior riparian owners.

As the case seems to have been tried upon an erroneous theory throughout—the rights of riparian owners being entirely disregarded, and the amount of water to which the plaintiff was adjudged to be entitled being largely in excess of the amount warranted by the evidence—the judgment must be reversed, and a new trial awarded. On a new trial it will be necessary for the court, sitting as a chancellor, to fully determine the rights of the respective parties, both as prior appropriators and riparian owners.

Judgment reversed, and new trial granted.

HANEY, P. J., concurs only in the conclusion that a new trial should be granted.