[Sac. No. 3132. In Bank.—November 27, 1922.]

## CHARLIE LEE PABST et al., Appellants, v. H. H. FINMAND et al., Respondents.

[1] WATERS AND WATER RIGHTS—PRESCRIPTION—USE BY LOWER RIPARIAN OWNER.—A lower use of water, since it interferes in no way with the flow above, constitutes no invasion of the upper riparian owner's right and cannot, therefore, afford any basis for a prescriptive right.

[2] ID.—USE BY UPPER OWNER—PRESCRIPTION.—Continuous use of water for the statutory period by an upper riparian owner gives no prescriptive right against a lower owner whose use is not interfered with thereby and who is without knowledge that the use is adverse, since he has the right to assume that the use is under riparian right.

[3] ID.—RELATIVE RIGHTS OF RIPARIAN OWNERS.—A riparian owner is entitled to a reasonable amount of water for use on his riparian lands, the amount varying with the circumstances of each case and also from year to year, and as long as an upper owner leaves sufficient water for the use of lower owners, it cannot be said that he is using an unreasonable amount and the lower owners have no cause for complaint.

---

1. Nature of riparian rights, and lands to which they attach, notes, 9 Ann. Cas. 1235; Ann. Cas. 1913E, 709; Ann. Cas. 1915C, 1026; 11 L. R. A. (N. S.) 1062.

3. Correlative rights of upper and lower proprietors generally, note, 41 L. R. A. 739.

[4] ID.—RIGHT BY PRESCRIPTION—UPPER RIPARIAN OWNER—ESSENTIALS.
In order that a right may be gained by an upper riparian
owner by prescription, it must be clearly shown either that actual
notice of the adverse claim of such owner has been brought home
to the lower owner, or that the circumstances are such that he
must be presumed to have known of the adverse claim, and use
of all the water when the lower owner is not using any and
has no desire to do so, is not sufficient.

[5] ID.—RIPARIAN CHARACTER OF LAND—RETURN OF WATER NOT TEST.
The fact that the water used upon riparian lands must be re-
turned to the original stream is not a test of the riparian character
of the land.

[6] ID.—SETTLEMENT UPON RIPARIAN LANDS—RIGHTS AS AGAINST SUB-
SEQUENT APPROPRIATOR.—Actual settlement upon riparian land
with the intention of subsequently acquiring a completed title by
patent is sufficient to create an equitable right in the land
as to cut off the rights of a subsequent appropriator.

[7] ID.—DIVERSION BY NONRIPARIAN OWNER—EFFECT OF.—A riparian
owner as against a nonriparian owner is entitled to the full
flow of a stream without the slightest diminution, and any
diversion by the latter is an invasion of the rights of the
former, regardless of damage to his present use.

[8] ID.—PRESCRIPTIVE RIGHT—QUANTITY OF WATER—BURDEN OF PROOF.
It is necessary for one claiming that the right to the use of a
certain quantity of water of a stream has been acquired by
prescription to show the quantity to which he is entitled.

[9] ID.—QUANTITY OF WATER—DETERMINING FACTOR.—The quantity of
water to which a person is entitled by prescription is not deter-
mined by the capacity of the ditch, but is limited to the amount
applied to a beneficial use, and such amount is a question of
fact in each case.

[10] ID.—PRESCRIPTION—USE PORTION OF TIME.—The use of all of
the water of a ditch, or of a part thereof for only a portion
of the time is not sufficient to give title to that quantity of
water continuously.

[11] ID.—JUDGMENT—CONSTRUCTION—CONTINUOUS USE.—A judgment
for a certain quantity of water by prescription not limiting the
use to any particular time or to any season of the year, must
be inferred to be one for continuous use.

[12] ID.—AMOUNT OF WATER NECESSARY TO BENEFICIAL USE—FINDING
—INSUFFICIENCY OF EVIDENCE.—In this action to quiet title to
the waters of a creek, the finding as to the amount of water reason-
ably necessary for beneficial use is not supported by the vague and
general testimony that the amount diverted was "necessary."

[13] ID.—CARRYING CAPACITY OF DITCH—TEST.—The carrying capacity of a ditch is to be tested by its carrying capacity at its smallest point.

[14] ID.—OWNERSHIP OF LANDS ON TWO FORKS OF STREAM—DIVERSION ABOVE FORK—CHARACTER OF.—Where lands are owned on two forks of a stream and water is diverted by such owner above the fork, all of the lands upon both forks are to be deemed riparian and such diversion an exercise of riparian ownership. (On denial of a rehearing.)

[15] ID.—DIVERSION FROM ONE FORK OF STREAM—USE ON LANDS RIPARIAN TO OTHER FORK—HOSTILE CHARACTER.—A diversion of water by an owner of lands on both forks of a stream from one fork for use upon lands which are riparian only to the other fork is hostile to the riparian rights of lands bordering upon the fork from which the water is taken. (On denial of a rehearing.)

APPEAL from a judgment of the Superior Court of Modoc County. Clarence A. Raker, Judge. Reversed.

The facts are stated in the opinion of the court.

Daly B. Robnett for Appellants.

A. K. Wylie and N. J. Barry for Respondents.

LENNON, J.—This action was instituted by the plaintiffs, Charlie Lee Pabst and the Priors, against H. H. Finmand and N. H. Finmand and the Cambrons, to quiet title to the waters of Eagle Creek, in the county of Modoc, state of California. Eagle Creek, rising in the Warner Mountains, west of the lands of both plaintiffs and defendants, flows in a single channel until just before it reaches the land of the plaintiffs, Priors, and the defendant, N. H. Finmand. There it forks and the north branch flows across the northwest corner of N. H. Finmand's lands and across the Prior lands. The south branch flows across the south portion of N. H. Finmand's lands and thence on to and across the lands of plaintiff Pabst.

The lands of the other defendant, H. H. Finmand, are not riparian to the creek. They lie to the west of the lands of the plaintiffs, Priors, and to the northwest of the lands of the plaintiff Pabst and the defendant N. H. Finmand, and are irrigated by means of two ditches, the "Gee" and

the "Grider" ditches, which run from the main channel of
Eagle Creek before it forks, northerly to the lands of H. H.
Finmand.

The trial court found that the lands of the defendant,
N. H. Finmand, were riparian to Eagle Creek and that the
defendant, N. H. Finmand, was entitled, as an appropriator,
to a first right to 300 inches of the water of Eagle Creek,
measured under a four-inch pressure, and that said defend-
ant also had a prescriptive right to said quantity of water.
The court found that the defendant, H. H. Finmand, was
entitled to a first right of 200 inches of water from Eagle
Creek through what is known as the "Gee" ditch, and a
first right to 200 inches of water through what is known
as the "Grider" ditch, both under a right by prior appro-
priation and by prescription. Judgment was accordingly
rendered and entered in favor of the defendant, N. H. Fin-
mand, for 300 miner's inches of water under a four-inch
pressure; and in favor of H. H. Finmand for 400 miner's
inches of water, under a four-inch pressure, for the irriga-
tion of his lands through the "Gee" and "Grider" ditches.
It is from this judgment that plaintiffs appeal.

The N. H. Finmand lands being riparian, whereas the
H. H. Finmand lands are nonriparian, the rights arising
from the use of water on these different tracts, are neces-
sarily based upon different principles and for this reason
these different tracts of lands will be considered separately.

As to the rights of the N. H. Finmand lands, it is con-
ceded by counsel for defendants that the right to the amount
of water awarded to the defendants by the judgment of the
trial court must rest upon a prescriptive right alone. This
is so for the reason that, as admitted by defendants, the
right by appropriation is not supported by the evidence and
while the trial court found that N. H. Finmand was a
riparian owner, no judgment was given such defendant based
upon his right as a riparian owner and no attempt was
made to apportion the waters among the plaintiffs and de-
fendants as riparian owners.

[1] The judgment for a prescriptive right was given in
favor of the N. H. Finmand lands against both the Prior
lands and the Pabst lands. The N. H. Finmand lands
claimed this right and it was adjudged to those lands upon
the theory that said lands had gained it by adverse use of

the water which was taken from the south fork of the creek. As to the Prior lands no right could be gained by prescription. This is so because the water used on the N. H. Finmand lands was taken from the south fork of the stream, which runs below and does not border the Prior lands, whereas the water diverted for use on the Prior lands is taken from the north fork of the creek, which runs by a small portion of the northwest corner of the N. H. Finmand lands and on to the Prior lands. The Prior lands, therefore, are riparan only to the north fork of the stream. A right can be gained by prescription only by acts which operate as an invasion of the rights of the person against whom the right is sought and which afford a ground of action by such party against such claimant and it is a rule of law so well settled by decisions in this and other states as to scarcely need any citation to support it, that a lower use, since it interferes in no way with the flow above, constitutes no invasion of the upper riparian owner's right and cannot, therefore, afford any basis for a prescriptive right. (*Hargrave* v. *Cook,* 108 Cal. 72 [30 L. R. A. 390, 41 Pac. 18]; *Bathgate* v. *Irvine,* 126 Cal. 135 [77 Am. St. Rep. 158, 126 Pac. 135]; *Walker* v. *Lillingston,* 137 Cal. 401 [70 Pac. 282]; *Perry* v. *Calkins,* 159 Cal. 175 [113 Pac. 136]; *Miller & Lux* v. *Enterprise Canal & Land Co.,* 169 Cal. 415 [147 Pac 567]; *San Joaquin etc. Co.* v. *Worswick,* 187 Cal. 674 [203 Pac. 999]; *Peake* v. *Harris,* 48 Cal. App. 363 [192 Pac. 310].)

[2] As to the Pabst lands, the N. H. Finmand lands are the upper riparian lands, and the Pabst lands are lower riparian lands. It is the contention of defendants that the continuous use of a certain amount of water each year for the statutory period of time gave to them a prescriptive right to that certain quantity of water so used by them, and this in spite of the fact that the use of the water by the lower riparian owner was never in any manner interrupted or interfered with by such use and in the absence of any indication or bringing of knowledge home to the lower riparian owner that the upper riparian owner was claiming such right, not as a riparian owner, but adversely to him. This contention cannot be maintained. In the absence of a showing that the upper owner is using the water under a claim of prescriptive right the lower owner has the right to pre-

sume that such owner is only taking that to which he is entitled as a riparian owner by virtue of his riparian right. (*Skelly* v. *Cowell,* 37 Cal. App. 215 [173 Pac. 609]; *Oliver* v. *Robnett, ante,* p. 51 [210 Pac. 408].) Such use was not hostile unless there was an actual clash between the rights of the respective owners. While there was sufficient water flowing down the stream to supply the wants of all parties, its use by one was not an invasion of the rights of the other. (*Anaheim W. Co.* v. *Semi-Tropic Co.,* 64 Cal. 185 [30 Pac. 623]; *Half Moon Bay Land Co.* v. *Cowell,* 173 Cal. 543 [160 Pac. 675]; *Peake* v. *Harris,* 48 Cal. App. 363 [192 Pac. 310].)

[3] A riparian owner is entitled to a reasonable amount of water for use on his riparian lands. What is a reasonable amount varies with the circumstances of each particular case and also varies from year to year, for the amount which might be reasonable in a season of plenty might be manifestly unreasonable in a season of drought. Nor is the question of reasonableness to be tested solely by the needs of the upper riparian proprietor. The rights of riparian proprietors are correlative and the "reasonable" amount to which any one riparian owner is entitled is to be measured by comparison with the needs of the other riparian proprietors. The fact that there was always sufficient water coming down the creek for the Pabst lands with the exception of the two years prior to the trial is undisputed by any evidence offered by the defendants. And so long as defendants left sufficient water in the stream for the use of the lower riparian proprietors it cannot be said that they were using an unreasonable amount and so long as they were not using an "unreasonable" amount the plaintiffs had no cause to complain nor was any right of theirs invaded. (*Half Moon Bay Land Co.* v. *Cowell,* 173 Cal. 543 [160 Pac. 675].)

[4] The adverse use must be such as to raise a presumption of a grant of an easement as the only hypothesis on which to account for the other party's failure to complain thereof. (*Lakeside Ditch Co.* v. *Crane,* 80 Cal. 181 [22 Pac. 76].) In the absence of any facts showing an actual knowledge by plaintiffs of the adverse nature of defendants' claim or of any facts sufficient to create a presumption of a knowledge of that claim, it cannot be said that a failure of plain-

tiffs to assert their rights by bringing an action against the defendants was such a submission as could be accounted for only on the hypothesis of a grant. Indeed, defendants have not shown such an unreasonable use of the water on their lands as to put plaintiffs on notice of their claim. We do not mean to hold that a right may not be gained by an upper riparian proprietor by prescription, but to do so it must be clearly shown either that actual notice of the adverse claim of such owner has been brought home to the other party, or that the circumstances are such, as for instance the use of all of the water of the creek, that such party must be presumed to have known of the adverse claim. In the instant case there was nothing to indicate to the lower riparian owners that the owners of the N. H. Finmand lands were exercising, or attempting to exercise, any more than their riparian rights, and in the absence of such indication to plaintiffs that the owners of the N. H. Finmand lands were asserting a right hostile to the rights of the plaintiffs. no prescriptive title was acquired. Even if the upper riparian owner is using all the water of the stream, still if the lower riparian owner is not then using any and has no desire to do so, such use by the upper riparian owner would not be adverse and, if continued five years, would not gain him a prescriptive right.

[5] Some point seems to be made of the fact that the water after use by the defendants could not be returned to the original stream and because of this fact it is argued that said lands are nonriparian. Of course there is no merit in this contention. The fact that the water used upon riparian lands must be returned to the original stream is not a test of the riparian character of the land. It is but an incident of the riparian use. There is no evidence, *pro* and *con,* in this case as to whether or not the water referred to could be returned to its original source and, therefore, we are not called upon to decide what would be the rule and relative rights of the parties where the water could not be returned.

[6] As to the H. H. Finmand lands the right to 400 inches of water was based by the trial court upon a title by prior appropriation and by prescription. There can, of course, be no question as to any riparian rights attaching since these lands nowhere touch or border upon Eagle Creek. Both the Prior and Pabst lands were settled prior to the

appropriation of water for the H. H. Finmand lands through the Gee ditch, so the question of whether or not these lands of H. H. Finmand are entitled to a right by prior appropriation, as distinguished from a prescriptive right, through that ditch depends solely upon the question of whether the riparian rights attached to the Prior and Pabst lands as of the date of settlement upon them. It is well settled that a patent from the United States government operates to transfer title not merely from the date of patent, but relating back, it becomes operative as of the date of the inception of the right to such land and cuts off all subsequent claims of others whether they be to the lands or to any of the incidents thereof. (Kinney on Irrigation and Water Rights, sec. 755.) It is insisted by defendants that the date of the inception of the right is the date of the filing of the formal application for the land and not the date of actual settlement thereon. Cases are cited by defendants in which it is held that riparian rights are protected from the filing of entry in the land office. In none of these cases, however, is the question of whether or not a mere occupancy, with the intention of taking further steps necessary for the completion of title, is sufficient to cut off subsequent rights, involved. While it is true that as against the United States the inception of the right of a settler relates only to the date of filing application, actual settlement gives to such settler a preference as to such filing so that as to subsequent parties other than the United States, the inception of the right is the date of settlement. In view of the fact that the rights of both the appropriator and the settler are based upon priority in time of taking the initial step, actual settlement upon the land with the intention of subsequently acquiring a completed title by patent is sufficient, we think, to create an equitable right in the land so settled upon by a *bona fide* settler as to cut off all intervening rights, including those of a subsequent appropriator. The right acquired by a prior appropriator relates back to the first step taken and we are of the opinion that the right of a settler should likewise date back to the first step taken, which in this case was actual settlement, rather than to the intermediate step of filing a formal application in the land office. (*Sturr* v. *Beck,* 133 U. S. 541 [33 L. Ed. 761, 10 Sup. Ct. Rep. 350, see, also, Rose's U. S. Notes]; *Faull* v. *Cooke,* 19 Or. 455 [20 Am. St. Rep. 836,

26 Pac. 662]; *Lone Tree Ditch Co.* v. *Cyclone Ditch Co.,* 15
S. D. 519 [91 N. W. 352]; *Stenger* v. *Tharp,* 17 S. D. 13
[94 N. W. 402]; *Redwater Land & Canal Co.* v. *Jones,* 27
S. D. 194 [130 N. W. 85].) As to the Grider ditch there
is some testimony in support of defendants' contention that
a right was gained through such ditch by prior appropria-
tion. Inasmuch, however, as defendants' contention that a
right by adverse user to the water of Eagle Creek through
both the Gee and Grider ditches must be sustained, and the
quantity of water to which the defendants are entitled,
whether by prior appropriation or by prescription, is limited
to the quantity of water actually diverted and beneficially
applied to the land in question, the solution of this question
is not necessary to a determination of the rights of the
parties.

[7] It is the contention of plaintiffs that there was no
invasion of plaintiffs' riparian rights by the nonriparian
owners of the H. H. Finmand lands by the diversion by such
nonriparian owners of water which the riparian owners did
not need and therefore no prescriptive right to the use of
the water could be acquired in the absence of a showing of
actual damage to the lands of the riparian owners caused
by a deprivation of the water. As to a nonriparian owner
the riparian owner is under no duty to share the waters of
the creek and the slightest use by such nonriparian owner
diminishes to some extent the flow of the stream. Obviously,
there is no question of reasonable use in the sense in which
that term is applied to the rights of respective riparian
owners since a riparian owner, as against a nonriparian
owner, is entitled to the full flow of the stream without the
slightest diminution. The initial step in the diversion of the
water by the nonriparian owner is therefore an invasion of
the right of the lower riparian owner and every subsequent
diversion is a further invasion of that right. Against a
person who seeks to divert water to nonriparian lands, the
riparian owner is entitled to restrain any diversion, and he
is not required to show any damage to his use. Although no
damage to the present use of the riparian owner results
from the diversion, yet damage to the future use may
result, and an injunction will be granted to prevent the
diversion from growing into a right by the lapse of the
statutory period. (*Lux* v. *Haggin,* 69 Cal. 255 [4 Pac. 919,

10 Pac. 674]; *Anaheim Union Water Co.* v. *Fuller,* 150 Cal. 327 [11 L. R. A. (N. S.) 1062, 88 Pac. 978]; *Miller & Lux* v. *Madera Canal Co.,* 155 Cal. 59 [22 L. R. A. (N. S.) 391, 99 Pac. 502].) In the instant case the adverse use of the water on nonriparian lands was continued "openly and notoriously" for a period longer than five years, and the slightest use by the owners of these lands being notice to all the lower riparian owners that a hostile right was being asserted, a prescriptive right was acquired by such adverse use by those lands.

[8] Conceding that a right to the use of a certain quantity of water had been acquired by prescription, it was necessary for defendants to show the quantity of water to which they were entitled. [9] The quantity of water to which a person is entitled by prescription is not determined by the capacity of the ditch but is limited to the amount applied to a beneficial use; that is, the amount actually used and reasonably necessary for the useful purpose to which the water has been applied. (*California etc. Co.* v. *Madera Irrigation Co.,* 167 Cal. 78 [138 Pac. 718]; *Haight* v. *Costanich,* 184 Cal. 426 [194 Pac. 26]; *Northern Cal. P. Co.* v. *Flood,* 186 Cal. 301, 304 [199 Pac. 315].) The amount necessary for a beneficial use is a question of fact in each case. And while, if the entire flow of water in a ditch was being beneficially used all of the time, a right to the entire flow would be acquired if it was continued for five years, manifestly the mere use alone of a definite quantity of water upon a parcel of land is not sufficient proof that the use was beneficial to its fullest extent since it may be that more water was being used than was required for the irrigation of that particular tract, and if so, such excess use obviously could not be termed a "beneficial use." (*California etc. Co.* v. *Madera Irr. Co.,* 167 Cal. 78 [138 Pac. 718]; *Turner* v. *East Side Canal etc. Co.,* 169 Cal. 652 [147 Pac. 579]; *Northern California P. Co.* v. *Flood, supra.*) Claimants to gain a right to the use of a definite amount of water must show that the quantity of water awarded them has been actually diverted, that it was applied to a beneficial use and that the amount claimed was reasonably necessary for such use. Defendants have attempted to do this by the testimony of a qualified surveyor as to the capacity of the ditches as they enter the lands of defendants, the testimony of other

witnesses that the size of the ditches has remained unchanged, testimony that the water in the ditches had run to their full capacity, that crops have been raised by irrigation, and the testimony of two witnesses, one of them the former owner of the H. H. Finmand lands, that the use of the amount diverted was "necessary" for such irrigation. There is, however, uncontradicted testimony that although at certain seasons of the year the ditches ran to their full capacity yet at other seasons they ran much lower. Indeed, at the time of the trial the testimony of the surveyor was that there was only 11½ inches running in the two branches of the Grider ditch through which the defendants claim a right to 200 miner's inches. And although there is testimony that defendants used all they wanted there is no testimony to prove the use of any specific quantity of water for any particular time. The same witnesses for the defendants, who testified that they used all of the water from the ditch on the lands, also testified that they turned it off and on just as they needed it.

[10] The use of all of the water of a ditch, or of a part thereof for only a portion of the time is not sufficient to give title to that quantity of water continuously. (*Haight v. Castanich, supra.*) In *Northern California Power Co. Consolidated v. Flood,* 186 Cal. 301 [199 Pac. 315], it was pointed out that the evidence left the question of the use of the water during the night-time uncertain, not showing clearly whether the continuous use spoken of was during the day only or both day and night during the irrigating season, and the court, pointing out that the value of the water for irrigation was too great to permit a land owner to gain a right thereto for the entire twenty-four hours of each day by using the same for only half or any portion of the whole, held that he gained a prescriptive right only for the period during which he had used it continuously. [11] In view of the fact that the judgment of the trial court in the instant case does not limit the use of the water to any particular time or to any season of the year, it must be inferred that the right was given to use the water continuously. There being no evidence of a continuous use, the finding that defendants had diverted and were entitled to 400 miner's inches without limitation as to the time of use, cannot be sustained.

[12]   Nor can there be said to be substantial evidence in support of the contention of beneficial use, that is as to the amount reasonably necessary for the irrigation of the tract in question.   The question of what quantity of water is reasonably required for irrigation is necessarily a complicated one dependent upon many different facts.   The character of the soil, the area sought to be irrigated, the climatic conditions, the location and altitudes of the lands to be irrigated, the kinds of crops to be raised, the length of the irrigation seasons must all be taken into consideration and weighed as well with such other circumstances as may be peculiar to each particular case.   (*Hough* v. *Porter,* 51 Or. 318 [95 Pac. 732, 98 Pac. 1083, 102 Pac. 728].)   The only evidence introduced by defendants in support of their contention that the amount diverted by them had been applied to a beneficial use and was reasonably necessary for the cultivation of the said tract of land was the vague and general testimony of the two witnesses that the amount diverted was ''necessary.''   While conceding the difficulty of proving the quantity of water beneficially used, nevertheless considering the complicated nature of the question and in view of the declared policy of this state to require the highest and greatest duty of water because of the immense importance to the state of the economical use of water, this testimony is not sufficient to support the finding of the court that 400 inches of water had been used and was reasonably required for the irrigation of the land in question.   By mathematical demonstration 400 miner's inches of water measured under a four-inch pressure applied for a year, which is the amount awarded by the judgment, and which it is claimed by defendants is necessary, would equal approximately 5,760 acre-feet, or over 19 feet for each acre of the 300-acre H. H. Finmand tract of land.   That this amount is reasonably necessary for a beneficial use is palpably improbable.   Indeed, it is conceded by counsel for defendants that the amount awarded ''seems exorbitant.''   This court is not, therefore, bound to sustain a finding based on such testimony.   (*Whited* v. *Calvin,* 55 Or. 98 [105 Pac. 396].)

[13]   It is also insisted by the plaintiffs that the testimony of the surveyor as to the carrying capacity of the Grider ditch measured at the points where the two branches thereof enter the H. H. Finmand lands is not sufficient to

support the finding that the amount of water as measured by the capacity of the ditches at those points was the amount of water actually diverted. This contention is based upon the testimony of the same witness to the effect that by measurements, taken some distance farther up the stream, he estimated the maximum carrying capacity of the two ditches, which branch off from the Grider ditch, to be 100 inches. Obviously the carrying capacity of the ditches is to be tested by its carrying capacity at its smallest point and not by its carrying capacity at its largest point. It is insisted by defendants that the testimony of the surveyor was in the first instance only an estimate which was corrected by his later testimony based upon actual measurements and that his testimony in both instances referred to the capacity of the same ditches at the same point. Upon a new trial of this case, it would be well to have this point cleared up.

Judgment reversed.

Shaw, C. J., Waste, J., Lawlor, J., Sloane, J., Wilbur, J., and Shurtleff, J., concurred.

Rehearing denied.

In denying a rehearing the court filed the following opinion on December 27, 1922:

THE COURT.—The sole point presented on the petition for a rehearing, and presented for the first time, is that 160 acres of the 240 acres N. H. Finmand lands is riparian to the north branch of Eagle Creek and that, therefore, the taking of water from a point on the south fork of the creek below the forks of the creek, by means of a diverting ditch for the irrigation of said 160 acres, has ripened into a prescriptive right to the use of such water. It may be conceded that the 160 acres in question are shown by the record before us to be nonriparian to the south fork of Eagle Creek; and it may likewise be conceded that the evidence adduced upon the whole case would support a finding that the said 160 acres are entitled to a prescriptive right to the use, through the medium of the diverting ditch in question, of such an amount of water, from the south fork of Eagle Creek as was actually and reasonably used and applied to a beneficial purpose.

[14] Evidently the allegation of the defendants' cross-complaint and the finding of the trial court that all of the N. H. Finmand lands, the 160 acres mentioned and 80 acres more, were riparian to Eagle Creek was made upon the theory that inasmuch as the 160 acres were riparian to the north fork and the 80 acres were riparian to the south fork, the whole tract was riparian to the main stream. As pointed out in the original opinion, the trial court ignored the finding that all of the N. H. Finmand lands were riparian to Eagle Creek and did not attempt to base any judgment thereon. Therefore, for the purpose of a new trial, it will suffice to say at this time, upon that phase of the case which involves the issue of the prescriptive right in question raised by the cross-complaint of the defendants, that so far as the diversion of water above the fork of Eagle Creek is concerned all of the lands upon both forks should be deemed riparian and consequently the·use of water diverted from above the place where the stream forks is an exercise of riparian ownership. [15] If, however, water is diverted from one fork for use upon lands which are riparian only to the other fork, such diversion is hostile to the riparian rights of lands bordering upon the fork from which the water is taken. That is to say, if the N. H. Finmand 160 acres diverted and used water from the south fork of the creek and said 160 acres are riparian only to the north fork, then such diversion and use is hostile to the riparian owners on the south fork and an invasion of their rights and may ripen into a prescriptive right. If, on the other hand, water which would normally flow into the north fork was by diverting dams caused to flow into the south fork and then taken therefrom for the purpose of irrigating the N. H. Finmand 160 acres which were riparian only to the north fork, such use to the extent of the amount of water so taken would be an exercise of the riparian right to the north fork of the creek of the N. H. Finmand 160-acre tract.

It should be noted, however, that the finding of the trial court in response to the issue of the prescriptive right in question grants to the N. H. Finmand lands in their entirety—the upper 160 acres and the lower 80 acres—280 inches of water of Eagle Creek measured under a four-inch pressure. The record shows that only the 160 acres would be entitled to a prescriptive right to the water of the south

fork of Eagle Creek and, therefore, the finding of the trial court that the entire 240 acres of the N. H. Finmand lands had acquired a prescriptive right to the water of the south fork of Eagle Creek is not sustained by the evidence. This is so because it appears from the evidence that 80 inches of the 280 inches of water awarded to the N. H. Finmand lands under a prescriptive right were taken from the south fork of Eagle Creek and delivered upon the 80-acre tract through the medium of a second diverting ditch at a point below the ditch which diverted the water of the south fork on to the 160 acres of land. The 80 acres of land are undeniably riparian to the south fork of the creek and whether the water used for the irrigation of those particular acres was taken from a point where the creek bordered thereon or from some near-by point, the taking would be that of a riparian owner and the rights of the respective parties to the water so taken are to be measured and ascertained by the rules covering and controlling the rights of riparian owners.

With reference to the question of whether or not the exercise by an upper riparian owner of his riparian right is to be deemed hostile to those below him, the question is one of fact to be tried and determined by the trial court. The exercise of the mere riparian right can never be hostile to the land below. Where, however, the use is under such circumstances as to be adverse and under a claim of right asserted against lower riparian owners, it may ripen into prescriptive title.

Rehearing denied.

Lennon, J., Shaw, C. J., Ward, J., Waste, J., Lawlor, J., Sloane, J., and Wilbur, J., concurred.