REDWATER LAND & CANAL CO. v. REED et al.

Alleged error in granting defendants leave to file an amended answer was not available, where, after the sustaining of a demurrer thereto, defendants by leave granted filed separate answers by which the amended answer was superseded.

So much of defendants' separate answers as embraced general and specific denials of the material allegations of the complaint was not demurrable.

The same facts should not be stated in an answer as a further defense and also as a counterclaim.

In a suit to establish water rights, facts relating to defendants' right under an appropriation and facts relating to defendants' rights as riparian proprietors should not be united in the same division of the answer.

Defendants' failure to separately state, in different divisions of the answer, facts constituting a defense arising from different sources, was waived by plaintiff's failure to move for an order requiring each defendant to separately state his several defenses and counterclaim.

An answer contained defenses arising under different rights not separately stated, and matter alleged as a counterclaim. Held, that a demurrer to the entire answer was properly overruled, where portions thereof constituted a defense, though they did not constitute a counterclaim.

In a suit to determine water rights, an allegation in the answer of one of the defendants that he in connection with his codefendant were the owners of, and were in possession of, a right to take water out of the R. river on the pre-emption claim of defendant R. to the amount of 2,000 miner's inches, that the water was located by R. on or about November 11, 1894, describing the water right by location certificate, etc., and that plaintiff's right or claim was adverse to defendant's riparian rights incident to the land so described, was without foundation in equity and cast a cloud on the title of defendant to the waters of the river and diminished the value thereof, etc., stated every essential element of a valid, subsisting water right by appropriation and was not demurrable.

Civ. Code, § 278, declares that the owner of land may use water running in a definite stream formed by nature over or under the surface as long as it remains there, but he may not prevent the natural flow of the stream, nor of the natural spring from which it commences, in its definite course, nor pursue nor pollute the same. Held, that a riparian proprietor, under such section, which was declaratory only of the common law, desiring to use the waters for irrigation, was not bound to divert the water at a point within the boundaries of his own land, but was entitled as against lower riparian proprietors to divert the water on the land of upper proprietors with their consent, so long as the quantity of water taken does not exceed the amount defendants are entitled to use.

Riparian rights depend on the location of the land with reference to the stream, and not on the method employed to use the water therefrom.

While the use of water by a riparian proprietor for irrigation necessarily involves a diminution thereof, its use must be with the least possible injury to others interested in the same stream; the area irrigated being limited to riparian land and to the actual needs of the proprietor.

In a suit to determine water rights between appropriators and riparian proprietors for irrigation, a complaint, in an action by plaintiff's grantor against H., to recover for water used by H., showing the number of inches claimed to be used by plaintiff's grantor at the time, verified by its superintendent, was competent as an admission against the grantor's interest and available against plaintiff.

Where plaintiff claimed a water right located by N., who testified as to the date of his location, copies of N.'s pre-emption proof, showing a date later than that stated by N., was admissible both on cross-examination and as independent evidence.

Where an answer by a defendant who was plaintiff's grantor was admissible against the latter as an admission against interest, it was also admissible against plaintiff as grantee.

Where an answer filed in a suit by plaintiff's grantor was offered as an admission against interest, defendants were not required to

offer the complaint to which the answer referred, which could not have affected the answer in so far as it related to the issue in question.

Objections to admission of evidence not made at the trial will not be considered on appeal.

Where an answer is offered in evidence as a declaration against interest, whether the court in which the answer was filed had jurisdiction of the suit is immaterial.

A mistake of counsel in describing the contents of the record of a deed was immaterial, where the record offered tended to establish the title it was offered to support.

Where a decree of distribution adjudged plaintiff to be the owner of certain land under the will of her husband, it was sufficient to establish title in her, as against collateral attach, regardless of the validity of the deed executed by her as executrix by herself individually.

An assertion in a reply brief that a decree of distribution was neither introduced in evidence nor incorporated in the bill of exceptions was insufficient either to compel or justify an examination of the original record; there being no conflict between appellant's abstract and respondent's additional abstract, or allegation in the former that it embraced all the evidence.

Where there is no conflict between the abstracts, the Supreme Court will accept the statements in the additional abstract as true.

A book offered as evidence of declarations against interest of plaintiff's grantor was objected to unless supplemented by proof that the accounts contained therein were correct and closed. **Held** that, as such objection went only to the order of proof, reversible error could not be predicated on the overruling thereof.

The issuance of a patent to homestead lands to "Joseph H. Owsley" under proceedings instituted by "J. H. Owsley," in connection with the various recitals in the patent raised an inference that there was satisfactory evidence before the Interior Department that the applicant and the patentee were the same person.

The issuing of a patent to homestead land by the Interior Department necessarily involves a finding by the department that the patentee is the same person who applied to enter the land, which finding is conclusive on the court in collateral proceedings.

A pleading may be amended to obviate a variance even after appeal.

Riparian rights exist by relation from the date of the settlement of the land.

Where a riparian proprietor settled on his land while it was Indian country, but continued to reside theron when the country was opened to settlement, and thereafter acquired title, such title would relate back to the date of the opening, and his riparian rights date from that event.

A patent to public land issued by the Interior Department on a settler's declaratory statement is evidence of due performance of every prerequisite to the issuance thereof and cannot be questioned at law or in equity except for fraud or mistake, especially on the ground that the patentee settled on the land while it was Indian country and prior to the opening thereof for settlement.

Where, in an action to determine water rights, there was ample proof that R. was living on certain of the land before and at the time plaintiff's water right was located, plaintiff was not prejudiced by the admission in evidence of R.'s declaratory statement pursuant to his entry showing that the entry was made while the land was Indian country.

Where a person makes a settlement on government land, and subsequently acquires title by patent from the government, it will be presumed, in the absence of a showing to the contrary, that he continued to reside on the land until he acquired title, and that he resided thereon when it was opened for settlement; it appearing that the land was open between the date of his declaratory statement and the date of his patent.

Where a motion for a new trial is made on a bill of exceptions, only such particulars wherein the evidence is alleged to be insufficient as are specified in the bill and embraced in the assignment of errors as printed in the abstract are available on appeal.

A specification that the evidence was insufficient to prove that either defendant owned the land described in his separate answer, on which alleged riparian rights were based, was insufficient for failure to point out the particular finding of fact as to ownership which was not sustained by the evidence.

A riparian proprietor's right to use the water of a stream is an incident of ownership of the riparian lands, which can be lost only by adverse prescriptive right, grant, or actual abandonment, and, does not depend on use, so that, where a riparian proprietor's settlement antedated plaintiff's appropriation, it was not material to the riparian proprietor's priority that he did not use the water for irrigation on his land prior to such appropriation.

The fact that neither a reparian proprietor nor an appropriator can claim more water than he actually uses for irrigation, and that he must use that taken for a beneficial purpose, without unreasonably interfering with the rights of others, does not prevent him from increasing the quantity used by him if required to irrigate his land.

Where plaintiff appropriated the waters of a stream for irrigation, the owners of riparian lands holding title pursuant to a settlement made prior to plaintiff's appropriation were entitled as against plaintiff to use all the water required for their domestic purposes and for the proper irrigation of all their land cultivable and riparian to the stream.

One entitled to priority in the use of the waters of a stream for irrigation is only entitled to so much water each season as is required to properly irrigate the crops then growing on his land, but cannot anticipate the quantity so that a decree, in a suit to establish water rights between an appropriator and riparian proprietors, should not adjudge that the defendants, entitled to priority, were entitled to use a specified number of inches, but rather that as against plaintiff they were entitled at all reasonable times only to such a quantity of water as would properly irrigate the crops actually growing on their land, and such as was required for domestic purposes.

Where one action was instituted against several defendants to establish water rights, and all the issues were tried and determined at the same time, the court properly rendered but one decision and judgment.

Where, in an action to determine water rights, the trial court assumed that an appropriation located according to the customs of the county created an enforceable right superior to a riparian right subsequently acquired, and both parties acquiesced in such conclusion by failing to object thereto on appeal, it would be regarded as the law of the case.

(Opinion filed November 26, 1910.)

Appeal from Circuit Court, Butte County. Hon. LEVI McGEE, Judge.

Action by Redwater Land & Canal Company against D. T. Reed and others. Judgment for defendants, and plaintiff appeals. Modified and affirmed and remanded, with directions.

*A. J. Plowman,* for appellant. *Martin & Mason, McLaughlin & Ogden,* and *R. P. Crawford,* for respondents.

HANEY, J. This is a controversy concerning the use of water for irrigation from Redwater river, in Butte county, between the plaintiff as an appropriator and the defendants as riparian proprietors. Were the flow of water in Redwater river as copious as the flow of redundant language in appellant's abstract and briefs, probably this litigation would not have arisen. Certainly less reason would have existed for damming the stream. Perhaps there is in all water-right cases some mysterious relation between the quantity of water and the quantity of language—a law of supply and demand which requires that the volume of language shall increase in direct ratio to the deficiency in volume of water. Whether this be so or not, it is certain that the supply of

language in this case greatly exceeds the requirements of the rules of this court. Appellant's abstract and briefs contain 712 compactly printed pages, of which two-thirds, at least, are devoted to redundant and useless matter, rendering it extremely difficult to discover what, if any, material questions are presented by the appeal, or to avoid an unusually extended decision.

The allegations of the complaint are to the effect that the plaintiff owns the right to take 4,,000 miner's inches of water from Redwater river for mining, milling, irrigating, and domestic purposes, located by James Newland in June, 1878; that prior to the assertion of any rights to the waters of such stream by the defendants the plaintiff became the owner of other water rights theretofore located thereon; that the plaintiff has expended large sums in maintaining and enlarging its ditches, its main ditch having been completed for a distance of 42 miles; that during the irrigating season all the water of the stream is required by plaintiff's appropriation; that in December, 1894, the defendants wrongfully and in violation of plaintiff's rights attempted to locate a water right 12 miles above the plaintiff's point of diversion; that they constructed ditches through which they have been taking large quantities of water and using the same for irrigation and other purposes to the irreparable injury of the plaintiff and to its damage in the sum of $5,000; that the defendants will continue to so injure the plaintiff unless restrained by the court; that by reason of the peculiar character of plaintiff's property, it being engaged in furnishing water to patrons, it would be extremely difficult to ascertain the extent of its damage; and that it has no speedy and adequate remedy in the ordinary course of law. Wherefore it demands damages in the sum of $5,000, a temporary and permanent injunction, together with costs and disbursements. The defendants answered denying all the allegations of the complaint except that they claimed a water right on the Redwater river, and alleging that they owned a right to 1,000 miner's inches, located by defendant Reed. Subsequently the court allowed the defendants to serve and file an amended answer, in which all the allegations of the complaint were denied except that defendants

claimed under the Reed location, and wherein it was alleged that each of the defendants owned certain described land riparian to the river, upon which his grantor made settlement on certain dates and thereafter received a patent to the same from the United States government. A demurrer to this amended answer having been sustained, the defendants were allowed to plead over, which they did by serving and filing separate answers, to each of which the plaintiff demurred, its demurrerrs were overruled, and the plaintiff replied.

The contention that the court erred in allowing defendants to serve and file the amended answer is not available, for the reason that such answer was superseded by the separate answers and ceased to have any effect upon the issues ultimately determined. Behrens Lumber Co. v. Lager, 25 S. D. 139, 127 N. W. 698.

The contention that the court erred in overruling the demurrers to the separate answers is not tenable. All the answers are the same in form; each containing certain denials and allegations stated as a defense and certain allegations stated as "a further defense and likewise by way of counterclaim." The language of each demurrer was as follows: "(1) Plaintiff demurs to the separate amended answer of the defendant * * * herein, and for cause thereof alleges that said separate amended answer does not state facts sufficient to constitute a defense to the cause of action set out in plaintiff's complaint. (2) Plaintiff also demurs to the further defense and counterclaim attempted to be set up in said separate amended answer, for the reason that the same does not state facts sufficient to constitute any defense or counterclaim to the cause of action set up in plaintiff's complaint." As to all the portions of the answer not stated as "a further defense and likewise by way of counterclaim," the demurrer was properly overruled for the reason that such portions embraced general and specific denials of material allegations of the complaint. Hill v. Walsh, 6 S. D. 421, 61 N. W. 440; Cumins v. Lawrence Co., 1 S. D. 158, 46 N. W. 182. The remaining portions of each answer are as follows: "For a further defense, and this defendant alleges

the same likewise by way of counterclaim, this defendant alleges that he, in connection with his codefendants herein, are the owners, in the possession and entitled to the possession of a water right taken out of Redwater river on the pre-emption claim of the defendant Daniel T. Reed, in Butte county, S. D., to the amount and extent of 2,000 miner's inches; the said water right having been located by the defendant Daniel T. Reed on or about November 11, 1894, and being the same water right now in the use and possession of this defendant and his codefendants herein, the location certificate of which is of record in the office of the register of deeds of Butte county, S. D., in Book 7, p. 213. That the plaintiff claims some right, title, or interest in or to the waters of Redwater right adverse to the riparian rights of this defendant incident to the lands hereinbefore described and adverse to the rights of this defendant growing out of said water-right location, which claim is without right or foundation or equity, and casts a cloud upon the title of this defendant to the waters of Redwater river and diminishes the value thereof." Undoubtedly the same facts should not have been stated as a further defense and also as a counterclaim. Nor should facts relating to the defendant's rights under the Reed appropriation and facts relating to his rights as a riparian proprietor have been united in the same division of the answer. But that objection was waived by plaintiff's failure to move for an order requiring the defendant to separate his several defenses and counterclaim. So the demurrer was properly overruled as to the entire answer if the portions quoted constituted a defense, though they may not have constituted a counterclaim. Clearly, the allegations relating to the Reed appropriation did constitute a defense. They disclosed every essential element of a valid subsisting water right by appropriation, the existence and ownership of which was one of the material issues raised by the pleadings. If such allegations were true, as admitted by the demurrer, and plaintiff's alleged right by appropriation did not exist, certainly the defendants were entitled to prevail in this action. Even if the plaintiff's right existed, a fact which was controverted, the priority of the respective rights was a ques-

tion to be ascertained from the evidence. And, even if the plaintiff's right was prior to that of the defendants as appropriators, they would still have rights subject to those of the plaintiff's which the court was bound to recognize and protect. Clearly, then, the demurrers to the separate answers were properly overruled.

It is contended the court erred in excluding evidence tending to prove that neither of the defendants nor any of his grantors had used water for irrigation by diverting it from the stream at a point within the boundaries of his land; it being claimed by appellant that section 278 of the Revised Civil Code requires the point of diversion to be within the boundaries of the riparian proprietor's premises. Section 278 is the same as section 256 of the New York Civil Code as proposed by the Code commissioners of that state. It reads thus: "The owner of the land owns water standing thereon, or flowing over or under its surface, but not forming a definite stream. Water running in a definite stream, formed by nature, over or under the surface, may be used by him as long as it remains there; but he may not prevent the natural flow of the stream, or of the natural spring from which it commences its definite course, nor pursue nor pollute the same." Among the authorities cited by the commissioners as the source of the clause "may be used by him as long as it remains there"—the clause relied on by the appellant—are Van Hoesen v. Coventry, 10 Barb. (N. Y.) 518, and Arnold v. Foote, 12 Wend. (N. Y.) 330. There is no suggestion in the report of the commissioners of an intention to change the common law respecting riparian rights. Therefore section 278 of our Civil Code should be regarded as merely declaratory of the common law as understood by the commissioners when their report was prepared.

In Arnold v. Foote, supra, the court said: "The doctrine of the common law in respect to the use of running waters is nowhere better expressed than by Chancellor Kent in his Commentaries, 3 Kent, 439. Every proprietor of lands on the banks of a river has an equal right to the use of the water which flows in the stream, as it was wont to run, without diminution or alteration. No proprietor has the right to use the water, to the

prejudice of other proprietors above or below him. He has no
property in the water itself, but a simple usufruct while it passes
along. He may use the water as it runs in its natural channel, but
he cannot unreasonably detain it, or give it another direction. He
cannot divert or diminish the quantity of water which would other-
wise descend to the proprietors below, nor throw the water back
upon the proprietors above. Streams of water are intended for
the use and comfort of man, and every proprietor is entitled to a
reasonable use of the water, and may apply it to domestic, agri-
cultural, and manufacturing purposes, but not so as to destroy or
materially diminish or affect the application of the water by the
proprietors below on the stream. Although each proprietor
through whose land a stream flows has a right to the use of the
water in its natural channel, he may not use it to the prejudice of
another. In the language of Mr. J. Story: 'The natural stream,
existing by the bounty of Providence for the benefit of the land
through which it flows, is an incident annexed to the land itself.'
[Tyler v. Wilkinson] 4 Mason, 400 [Fed. Cas. No. 14312]. The
use of the water for culinary and agricultural purposes implies a
diminution of it, but this use must be with the least possible injury
to others interested in the same stream."

Construed as a condensed expression of the principles thus
announced, section 278 does not sustain appellant's contention.
Riparian rights depend upon the location of the land with refer-
ence to the stream, not upon the method employed to use the
water therefrom. The use of the water for irrigation necessarily
involves a diminution of it; but this use must be with the least
possible injury to others interested in the same stream. The area
irrigated must be limited to riparian land and to the actual needs
of the proprietor. He does not own the water; he has no control
over what is not required for his own use; and he has no cause
to complain so long as his use of the stream is not injuriously
affected. Of course, these defendants could not divert water at a
point above their riparian land in violation of the rights of any
intermediate riparian proprietor, nor could they construct ditches
through land other than their own without the owner's consent;

but the rights of no one so situated will be affected by this litigation. If, by reason of the location of their land, these defendants are riparian proprietors, the only duty they owe to the plaintiff, whose point of diversion is lower down the stream, is to use the water to which they are entitled with the least possible injury to the plaintiff, and the extent of such injury cannot be affected by the fact that they take their water from the stream at a point without instead of within the boundaries of their riparian lands. The effect upon the water flowing down to plaintiff's point of diversion will be the same whether the same quantity of water be taken out by the defendants by means of a ditch through lands above their own, or by means of an hydraulic engine located within the boundaries of their own land. The material questions in this connection are: (1) Is defendants' land riparian to the stream? (2) Is it cultivable? (3) Does it require irrigation? Whether the appliance employed to utilize the water is located on riparian land or not is wholly immaterial so long as the quantity of water taken does not exceed the quantity which defendants are entitled to use. The fallacy of appellant's contention is further disclosed by consideration of the result which would follow its acceptance. Defendants would be required to abandon their present point of diversion and incur the expense of securing other appliances for getting the water onto their lands. They would still be entitled to the same quantity of water. They would be greatly injured with no resulting benefit to the plaintiff. "Interpretation must be reasonable." Rev. Civ. Code, § 2441. Nothing could be more unreasonable than appellant's interpretation of the section under discussion. The Supreme Court of California, where the doctrine of the common law, in respect to the use of running water, is recognized in connection with statutory regulations regarding its appropriation, has said: "A riparian owner may, for the more convenient use of the water on his riparian land, go upon the land of another further up the stream with the consent of such landowner, and there divert the water for use upon land below, or he may raise it to the surface of his land by pumps or other artificial means. In either case his act in so doing is not

necessarily different from the exercise of his right as a riparian owner, and such a diversion above his land may or may not be considered as an attempt to make an appropriation of the water independent of the riparian right, according to the circumstances that appear with respect to the particular case." Rose v. Mesmer, 142 Cal. 322, 75 Pac. 905. Therefore, upon both principle and authority, the trial court was right in ruling that, as to an appropriator whose point of diversion is lower down the stream, it is immaterial whether the riparian proprietor takes the water to which he is entitled at a point above and beyond the boundaries of his riparian premises or within the same.

The contention that the court erred in allowing defendants to introduce in evidence the complaint in an action wherein this plaintiff's grantor was plaintiff and one Harrison was defendant is untenable. That was an action to recover for water used by Harrison; the complaint showing the number of inches claimed to be used by the plaintiff's grantor at that time. The complaint was verified by the superintendent of the plaintiff's grantor. It was competent as a written admission against such grantor's interest and as such was admissible against the plaintiff in this action. 1 Jones, Ev. § 243. Moreover, in view of the real issues involved and all the evidence, it was entitled to little or no weight, and, as the case was tried without a jury, this court will assume that it was properly considered by the trial court in rendering its decision.

James Newland was the locator of plaintiff's alleged water right. He was a witness on behalf of the plaintiff. One of the material issues of fact was the date of such location. Copies of Newland's pre-emption proof were properly received as a part of his cross-examination and as independent evidence tending to prove a date later than that stated by the witness; he having fixed such date by reference to the time of his settlement.

Defendants offered in evidence the answer in the forcible entry and detainer case of Tomlins v. Moore et al., which was verified by two of the defendants, in which James Newland was a defendant, and which contained these allegations: "That the de-

fendants are members of an incorporated company, to-wit, the Redwater & Belle Fourche Milling & Irrigating Company, a body corporate under the laws of the territory of Dakota, and that, acting in their corporate capacity and under the laws of the territory of Dakota relating to ditch companies, they surveyed and located their ditch on the line hereinbefore described on or about the 1st day of February, A. D. 1879." Plaintiff objected (1) because the complaint to which the answer referred was not offered, and (2) because the declarations in such answer were not binding on the plaintiff, the Redwater & Belle Fourche Milling & Irrigating Company, not having been made a party to the action in which the answer was filed. The overruling of this objection was not reversible error. Plaintiff alleged that Newland was the locator of its water right. He was plaintiff's grantor. The answer in the justice's court was filed as the answer of all the defendants of whom he was one. Such answer being competent as an admission against him, it was admissible against the plaintiff as grantee. Behrens Lumber Co. v. Lager, supra; 1 Jones, Ev. § 243. Dedefendants were not required to offer the complaint to which the answer referred. Such complaint could not have affected the answer as a declaration regarding the date of the Newland location. The contention in appellant's brief that this answer should have been excluded because no evidence was introduced to show that any such person as J. W. Blake was justice of the peace at the time the summons was issued, or that the justice's court had jurisdiction to receive the answer, is not available for the reason that the plaintiff did not object to its introduction on that ground. Moreover, it was introduced as a written declaration of the parties for whom and by whom it was prepared and was admissible as such whether or not the court had jurisdiction of the action in which it was filed.

It is alleged in defendant Dorsett's separate answer that he is the owner of a certain described tract of land settled upon by Thomas Short, July 13, 1877. To prove this allegation, defendants offered "the record of a deed from Thomas Short to Mary Short, recorded in Lawrence county, in Book 111, p. 419." When

this offer was made, the record was not present, and plaintiff's counsel reserved the right to interpose further objections when its contents should be ascertained. Subsequently it appeared that the page thus offered was the record of a deed from Mary Ann Short, as executrix of the estate of Thomas Short, deceased, to Mary Ann Short of Lawrence county. In other words, the deed of an executrix to herself executed pursuant to an order of the county court, instead of a deed from the original grantee of the government to Mary Ann Short. The mistake of counsel in describing the contents of the record was immaterial if the offered page tended to establish Dorsett's title; the only serious objection to the evidence being the peculiar nature of the instrument itself— a deed apparently from an executrix to herself executed pursuant to an order of the county court. But the prima facie validity of such an instrument need not be considered. Respondents' additional abstract contains a decree of distribution, entered by the county court, adjudging Mary Ann Short to be the owner of the land, under and by virtue of the provisions of the last will and testament of Thomas Short, deceased. Such decree is clearly sufficient to establish title in Mary Ann Short as against plaintiff's collateral attack in this action. Therefore, if the court erred in admitting the executrix's deed, it was error without prejudice. Appellant's counsel assert in their reply brief that the decree of distribution was neither introduced in evidence nor incorporated into the bill of exceptions. Such assertion does not compel or justify an examination of the original record. There is no conflict between appellant's abstract and respondent's additional abstract. There is no allegation in the former that it embraces all the evidence. Where there is no conflict between the abstracts, this court will accept the statements in the additional abstract as true. Wood v. Mining & Milling Co., 20 S. D. 161, 105 N. W. 101; Grigsby v. Wolven, 20 S. D. 623, 108 N. W. 250; Omaha Rubber Shoe Co. v. Mercantile Co., 25 S. D. 124, 125 N. W. 637.

Defendants' Exhibit R, a book apparently showing the accounts of the plaintiff's grantor from 1884 to 1887, was offered as evidence of declarations against the interest of such grantor.

Plaintiff objected to the offer "unless they (the defendants) sup plement it with proof showing those accounts to be correct and closed up," which objection was overruled. The objection went only to the order of proof. It invited a ruling admitting the evidence subject to a motion to strike should defendants fail to furnish the supplementary evidence suggested. Reversible error cannot be predicated upon such a ruling.

To sustain the allegation that defendant Keets is the owner of certain described land settled upon by James H. Owsley April 1, 1880, defendants offered certified copies of the records of the General Land Office showing an application to enter the same under the United States homestead laws by J. H. Owsley and a patent from the United States to Joseph H. Owsley. To these offers plaintiff objected because there was no evidence that J. H. and Joseph H. Owsley were one and the same person. The objection was properly overruled. The patent itself affords abundant evidence that it was issued to the same person who made the application. It describes the same land and refers to the application by the number given it in the Deadwood land office, where it was filed. The issuing of a patent to Joseph H. Owsley in the proceedings initiated by J. H. Owsley for the land described in the latter's application, considered in connection with other recitals in the patent, gives rise to the inference that there was satisfactory evidence before the department showing that the applicant and patentee were one and the same person. The issuing of the patent necessarily involved a finding to that effect by the department, and such finding was conclusive upon the circuit court in ruling upon plaintiff's objection. The contention that the evidence should have been excluded because there was a variance between the proof and the pleading as to the name of the person who made settlement upon the land now owned by defendant Keets is untenable, for the reason that the plaintiff did not object on that ground. If it had done so, the mistake in the pleadings might, and undoubtedly would, have been corrected by amendment. If the matter were of any importance, amendment would now be permitted.

To sustain the allegation that defendant Keets is the owner of certain other described land settled upon by Peter Reilly April 1, 1878, defendants offered a certified copy of Reilly's declaratory statement, filed April 16, 1880, alleging settlement November 20, 1876. To which plaintiff objected "because it appears that the date of the alleged settlement was when the country was Indian country and settlement was prohibited by law." The real issue was whether Keets' riparian right was prior to plaintiff's appropriation. Riparian rights exist by relation from the date of settlement. Lone Tree Ditch Co. v. Cyclone Ditch Co., 15 S. D. 519, 91 N. W. 352, s. c., 128 N. W. 596; Stenger v. Tharp, 17 S. D. 13, 94 N. W. 402. The purpose of the evidence was to establish the fact that the proceedings which resulted in the acquisition of Reilly's title were initiated by settlement prior to the date of plaintiff's location. Assuming this land was in territory which did not cease to be Indian country until February 28, 1877, and that Reilly was prior to that time a trespasser, if he continued to occupy the land and was residing thereon when the country was opened to settlement, his after-acquired title would relate back to the date of opening, or February 28, 1877. Scott v. Toomey, 8 S. D. 639, 67 N. W. 838. The defendants introduced a patent from the United States to Reilly, founded upon the declaratory statement in question, which was evidence of the due performance of every prequisite to its issuance, and which cannot be questioned either at law or in equity except on the ground of fraud or mistake. 26 Ency. Law (2d Ed.) 449. Therefore the validity of Reilly's title, subsequently transferred to the defendant Keets, cannot be questioned in this action on the ground that the former settled upon the land prior to February 28, 1877. And, whether or not the patent is conclusive evidence of the date of Reilly's settlement, it was not reversible error to admit the declaratory statement, as there was ample evidence to justify the finding that Reilly was living on the land before and at the time plaintiff's water right was located. The court found that Reilly's settlement was November 20, 1876, the date stated in the declaratory statement, while the allegation in defendant Keets' answer is that such settlement was made about

April 1, 1878. There was no objection to the declaratory statement on the ground of variance between the proof and pleading, and, if there had been, it should have been overruled because the variance was immaterial. Nor was the court's conclusion that Keets' right was prior to plaintiff's unsupported by its findings of fact. If Reilly made settlement November 20, 1876, and subsequently acquired title as found by the court, it should be presumed, in absence of any showing to the contrary, that he continued to reside on the land until his title was acquired, and that he was residing thereon when it was opened for settlement.

The trial court found that defendant Keets owns a certain described tract of land riparian to Redwater river, all of which is cultivable and can be irrigated with the waters of that stream, upon which his grantor made settlement November 20, 1876, and thereafter received a patent from the United States government; that defendant Keets owns another described tract of land in the same situation, upon which his grantor made settlement April 1, 1878, and thereafter received a patent from the United States government; that defendant Keets owns still another tract in the same situation, except that only 20 acres of it can be irrigated, upon which his grantor made settlement July 10, 1885, and thereafter received a patent from the United States government; that defendant Dorsett owns a certain described tract of land riparian to Redwater river, all of which is cultivable and can be irrigated with the waters of that stream, upon which his grantor made settlement October 15, 1876, and thereafter received a patent from the United States government; that defendant Dorsett owns another described tract in the same situation, upon which his grantor made settlement July 13, 1877, and thereafter received a patent from the United States government; that defendant Dorsett owns still another described tract riparian to Redwater river, 115 acres of which are cultivable and can be irrigated with water from that stream, upon which he made settlement January 1, 1876, and thereafter received a patent from the United States government; that defendant Reed owns a certain described tract of land riparian to Redwater river, all of which is cultivable and can be

irrigated with the water from that stream, upon which he made settlement March 11, 1879, and thereafter received a patent from the United States government; that Redwater river flows through each of the above-mentioned tracts of land; that all these lands are in a semiarid region; that it is necessary to irrigate the same in order to grow crops thereon; and that one miner's inch of water is necessary for the proper irrigation of each acre of cultivable land. It also found that, subsequent to the location of the plaintiff's water right, the defendants constructed two ditches on the land of defendant Reed, by which they have been diverting 625 miner's inches of water and using the same for irrigating their lands, but that all the cultivable land owned by them has not been irrigated. It further found: "That a number of farmers along Redwater river, who subsequently incorporated under the name of the 'Redwater & Belle Fourche Milling & Irrigating Company,' caused a preliminary survey of a ditch to be made during the year 1878, and caused certain lumber for flumes on said ditch to be hauled during the last day of December, 1878, and the fore part of 1879; the said ditch being subsequently known as the 'Newland Ditch.' That on February 1, 1879, one of said farmers, to-wit, James Newland, located a water right on Redwater river at a point below the mounth of False Bottom creek, designated by said survey, by posting a notice at said point, claiming 4,000 inches of the waters of Redwater for mining, milling, irrigating, and domestic purposes. That thereafter a copy of said notice was filed in the office of the register of deeds in and for Lawrence country. That the said locator thereafter proceeded with reasonable diligence to divert the water from said stream by means of ditches and flumes. That thereafter and during the years 1879 and 1880 some seven or eight miles of ditch was completed for the purpose of irrigating the lands of the said Newland and other parties under said ditch. That there was diverted in said ditch and actually used for beneficial purposes within a reasonable time from the date of location thereof 2,200 miner's inches of the waters of Redwater river, which water was used in running a flouring mill at or near Minnesela, and in irrigating the lands of

farmers situated under said ditch." That the water right so located was transferred to the plaintiff in the fall of 1889. That about that time the plaintiff changed its point of diversion, taking out a new ditch and enlarging the old one, increasing the capacity of the latter to about 10,000 miner's inches and extending it a distance of about 35 miles. That since such enlargement the plaintiff has, during a short time in two seasons, required and used all the waters of Redwater river for irrigating purposes, the waters thereof being insufficient to fill its ditch; but at no time have the waters of that stream carried less than 2,200 miner's inches at the point of plaintiff's diversion. And that from the date of the location of the plaintiff's ditch until its enlargement more than one-half of the waters of the river, exceeding 750 miner's inches, flowed past its headgate at all times during each season.

Upon the pleadings and facts as found by the trial court it was adjudged: "(1) That the defendant Henry Keets is the owner and in the possession of the following described lands, which are cultivable and 340 acres of which can be irrigated with the waters of Redwater river, and all of which are riparian to the said river, to-wit. * * * (2) That the defendant David M. Dorsett is the owner, in the possession, and entitled to the possession of the following described lands, which are cultivable, and 395 acres of which can be irrigated by the waters of Redwater river, and all of which are riparian thereto, to-wit. * * * (3) It is further adjudged and decreed that the said defendants, Henry Keets and David M. Dorsett, their heirs and assigns, have a right prior to that of the plaintiff, its successors or assigns, to use and divert from Redwater river sufficient water, to-wit, one miner's inch per acre for the proper irrigation of all the cultivable land upon each of the said tracts hereinbefore described, and also for domestic and agricultural purposes connected therewith, whether such diversion be made on the premises hereinbefore described, or at any point on said river above the same; and the right of the said defendants, Dorsett and Keets, to such prior use and diversion of the waters of Redwater river is hereby forever quieted in them, their heirs and assigns, as against the plaintiff, its succes-

sors and assigns; and the plaintiff, its successors and assigns, their officers, agents, and employes, are hereby forever enjoined and restrained from in any manner interfering with such use by the defendants, Dorsett and Keets, their heirs and assigns, of the waters of the Redwater river for the proper irrigation of all the lands hereinbefore described which are cultivable and for domestic and agricultural purposes connected therewith. (4) It is further adjudged and decreed that the defendant Daniel T. Reed is the owner and in the possession of the following described premises, all of which are cultivable, and all of which can be irrigated from the waters of Redwater river, and which premises are riparian to said river, to-wit: The N. W. ¼ of the S. W. ¼, and the E. ½ of the S. W. ¼, and the S. W. ¼ of the S. E. ¼ of section 11, township 7 N., range 1 E.; B. H. M. (5) That the said Daniel T. Reed, his heirs and assigns, have the right to divert and use upon the land last hereinbefore described, whether such diversion be made on said land, or at any point on said river above the same, sufficient water from Redwater river for the proper irrigation thereof, after first allowing sufficient water to flow past said land to enable the plaintiff, its successors or assigns, to obtain 2,200 miner's inches of water through the head-gate of its present ditch, or canal, situated below said lands (a miner's inch of water consisting of an amount of water which will flow through an opening one inch square with a head of water of six inches above the opening, and the amount of water necessary for the irrigation of said premises being one miner's inch to each acre thereof), and the right of the said Daniel T. Reed to so divert and use such water, after allowing said amount to flow past the said land, is hereby quieted and confirmed in the said Daniel T. Reed, his heirs and assigns; and the plaintiff, its successors and assigns, their officers, agents, and employes, are hereby forever enjoined and restrained from in any manner interfering with such use by the said Daniel T. Reed, his heirs and assigns, of the waters of Redwater river for the proper irrigation of all the land last hereinbefore described which is cultivable, to-wit, the whole thereof, and for domestic and agricultural pur-

poses connected therewith. (6) It is further adjudged and decreed that the plaintiff recover no damages against the defendants, or any of them, by reason of the diversion and use of the water of Redwater river heretofore made by the defendants herein."

In discussing the alleged insufficiensy of the evidence to justify the decision of the trial court, counsel for appellant has extended his argument far beyond the legitimate limits of the record on this appeal. The abstract embraces only one assignment of error relating to that subject. It begins thus: "The court erred in making and signing the decision herein, for the said decision is contrary to the evidence and the law in this case; that the evidence is insufficient to sustain the findings of fact therein, as specifically set out in the written objections thereto, served and filed July 26, 1904." Following this statement are several specifications of the particulars wherein the evidence is alleged to be insufficient. The latter only require consideration. The motion for a new trial having been made on a bill of exceptions, only such particulars wherein the evidence is alleged to be insufficient, as are specified in the bill and embraced by the assignments of error, as printed in the abstract, are available in this court. Thompson v. Railway Co., 26 S. D. —, 128 N. W. 809; Whaley v. Vidal, 128 N. W. 331. Eliminating unnecessary repetitions, the allegations of insufficiency are (1) There was no evidence to show that either defendant had any vested right or interest in and to the lands or to the waters of Redwater river, set out in his answer prior to plaintiff's appropriation. (2) That there is no evidence to show any beneficial use of the water by either defendant prior to the plaintiff's appropriation. (3) There was no claim to the water made by either defendant as a riparian owner until the amended answer in this case was filed. (4) The plats of the township wherein defendant's lands are situated were not filed until after plaintiff's appropriation. (5) There was no evidence showing any conveyance from Thomas Short to defenant Dorsett. (6) There was no evidence that James H. Owsley ever owned the land now owned by defendant Keets. (7) There was no evidence showing how much land was actually irrigated

by either defendant.   (8) That the undisputed evidence showed that 60 acres of defendant Reed's pre-emption could not be irrigated with water from Redwater river.   If, by the first specification, it was intended to object to the decision on the ground that the evidence failed to prove that either defendant owned the land described in his separate answer, such specification was insufficient, in that it did not point out the particular finding of fact as to ownership which was not sustained by the evidence. It is apparent, however, that the first, second, and third specifications were all designed to support the contention that neither defendant had any "vested" right to water, which was prior to plaintiff's appropriation, for the reason that neither had used water prior to such appropriation.   If this be so, the contention . is untenable.   The riparian proprietor's right does not depend upon use; it is an incident of ownership which can be lost only by adverse prescriptive right, grant, or actual abandonment.   When title to the lands now owned by the defendants was acquired, it carried with it the right to use the waters of Redwater river for irrigation and other beneficial purposes, subject to the equal rights of other riparian proprietors.   By relation this incident of ownership belonged to such lands . from the date of the settlement upon each tract, which culminated in the title subsequently acquired by the present owner.   Lone Tree Ditch Co. v. Cyclone Ditch Co., supra; Stenger v. Tharp, supra.   Neither a riparian proprietor nor an appropriator can claim more water than he actually uses, and he must use what he does for a beneficial purpose without unreasonably interfering with the rights of others.   But this does not mean that a riparian proprietor may not increase the quantity used by him if it be required to irrigate his land.   In other words, plaintiff's appropriation, assuming it to have been lawfully located, was sub-. ject to every riparian right existing at the time of its location whether the riparian right had been previously exercised or not. So, as against this plaintiff, each of the defendants, who can connect his title with a settlement made prior to plaintiff's appropriation, has the right to use all the water required for his domestic purposes and for the proper irrigation of all his land that . is.

cultivable and riparian to the stream in controversy. The quantity of water required will, of course, vary according to the season. Some crops will require more than others. Therefore each of these defendants, whose right is prior to that of the plaintiff, is entitled, as against the plaintiff, to use only so much water, each season, as is required to properly irrigate such crops as may be growing on his riparian land. The quantity required cannot be anticipated. Hence the decree in this case should not adjudge that either defendant is entitled to use any specified number of inches, but that he is, as against the plaintiff, entitled to use, at all reasonable times, such quantity as shall be required to properly irrigate the crops actually growing upon his riparian land, and such quantity as shall be required for his domestic purposes.

What has been already said disposes of the fourth specification. The alleged defect in defendant Dorsett's title, suggested by the fifth specification, has been heretofore considered. The sixth specification merely points out the mistake in Owsley's name, found in the pleadings and inadvertently carried into the decree. As has been shown, this variance was wholly immaterial. It could not have prejudiced any substantial right. The seventh specification, relating to the area of land actually irrigated, presents another immaterial matter. Plaintiff's claim for damages having been limited by stipulation to nominal damages, the issue to be determined is the quantity of water to which each of the defendants will be hereafter entitled, not the amount which either has heretofore taken from the stream. The contention based on the eighth and last specification must be sustained. The court found and adjudged that defendant Reed is the owner of a certain described tract of land, all of which can be irrigated from the waters of Redwater river. The finding is not sustained by the evidence. It should have read that all the tract can be irrigated except 60 acres. The judgment should be modified to correspond with the facts as established by the evidence.

The contention that the court erred "in not stating the findings of fact and conclusions of law separately upon the issues raised by the allegations of the complaint, the separate answers

of the respective defendants, and the separate replies thereto, and in failing to enter separate judgments upon such issues," is manifestly without merit. It involves a mere matter of form devoid of any semblance of substance. If the decree is supported by the facts as found, what possible difference can it make to any one whether such facts are stated in one decision or in three? · Or what possible difference can it make whether the rights of the several parties, as determined by the court, are defined in one or three separate judgments, provided such rights are correctly defined? Moreover, the procedure pursued was correct in form. Notwithstanding separate answers were filed, there was only one action, all the issues of which were tried and determined at the same time. An action so tried requires—admits of—but one decison and one judgment.

The only remaining matter meriting attention is whether the decree or judgment conforms to the facts and the rules of law applicable thereto. For the purposes of this appeal, the facts must be deemed to be as found by the trial court, except as to the quantity of defendant Reed's land which can be irrigated. So it is established that  plaintiff's appropriation was located February 1, 1879. This was prior to the enactment of the 1881 statute relating to water rights. But no question as to the validity of plaintiff's right, on that ground, arises on this appeal, for the reason that the court below assumed that an appropriation, located according to the customs of the country, created an enforceable right superior to riparian rights subsequently acquired, and defendants acquiesced in such conclusion by failing to appeal. As the view of the learned circuit court on the proposition is the law of this case, no opinion on the subject will be expressed in this decision. The Reed ditch, through which the defendants were taking water, having been subsequently located, their rights, by reason of such appropriation, are inferior to those of the plaintiff and require no further consideration. As riparian proprietors, however, they have the right, as against the plaintiff, to use sufficient water for domestic purposes and for the irrigation of all the cultivable riparian land which can be irrigated, and which was

settled upon by their grantors prior to the location of the plaintiff's appropriation. As to riparian land settled upon subsequently to such location, the owner thereof is not entitled to use any water for irrigation to the injury of the plaintiff's appropriation. But, as heretofore suggested, the quantity of water to which the first-mentioned riparian proprietors are entitled is the quantity actually required from time to time for domestic purposes and to irrigate the crops actually growing upon the riparian lands, which were settled upon before the plaintiff's water right was located. In so far as the judgment of the circuit court fails to conform to these conclusions, it should be modified.

It appears from the decision of the trial court that the S. E. ¼ of the S. E. ¼ of section 12, the E. ½ of the N. E. ¼, and the N. E. ¼ of the S. E. ¼ of section 13, township 7 N., range 1 E., owned by defendant Keets, was settled upon July 10, 1885. As to this land Keets' rights are subsequent and subject to the rights of the plaintiff. As heretofore stated, it should not be adjudged that either defendant' is entitled to any specified quantity of water. Therefore, the third paragraph of the decree, as printed in the abstract, should be so modified as to read as follows: "It is further adjudged and decreed that the said defendants, Henry Keets and David M. Dorsett, their heirs and assigns, have a right prior to that of the plaintiff, its successors or assigns, to use and divert from Redwater river sufficient water for the proper irrigation of all the cultivable land upon each of the said tracts hereinbefore described, except the S. E. ¼ of the S. E. ¼ of section 12, the E. ½ of the N. E. ¼, and the N. E. ¼ of the S. E. ¼ of section 13, township 7 N., range 1 E., and also for domestic and agricultural purposes connected therewith, whether such diversion be made on the premises hereinbefore described, or at any point on said river above the same; and the right of the said defendants, Dorsett and Keets, to such prior use and diversion of the waters of Redwater river, is hereby forever quieted in them, their heirs and assigns, as against the plaintiff, its successors and assigns; and the plaintiff, its successors and assigns, their officers, agents, and employees, are hereby forever enjoined and restrained from in any

manner interfering with such use by the defendants Dorsett and Keets, their heirs and assigns, of the waters of Redwater river for the proper irrigation of all the lands hereinbefore described which are cultivable and for domestic and agricultural purposes connected therewith." It appearing from the undisputed evidence that 60 acres of defendant Reed's land cannot be irrigated, the fourth paragraph of the judgment should be modified by inserting the words "except 60 acres" after the word "river" in the fifth line of the paragraph as printed in the abstract. The fifth paragraph should be so modified as to include a determination of defendant Keets' rights with respect to the land owned by him, which was settled upon subsequently to the location of plaintiff's appropriation, consistent with the conclusions of this court, and the facts as found by the trial court, regarding the quantity of water to which plaintiff has the prior right by reason of its appropriation. Finding no other errors properly reviewable on this appeal, the judgment, modified as indicated, should be affirmed, and the cause remanded, with direction to enter a judgment conforming to this decision. In view of the nature of the modifications and the quantity of redundant matter in appellant's abstract, neither party should be allowed costs or disbursements in this court, except clerk's fees, to be taxed in favor of appellant.